## H. C. Hatchell v. The State.

### No. 3011.   Decided November 30, 1904.

**1.—Murder—Evidence—Impeachment of Witness—Bill of Exceptions.**

Where the district attorney first read in evidence on the trial of defendant for murder, a written statement of the testimony of defendant's witness V., made at the defendant's said final trial to the effect that V. had heard W. testify at the defendant's examining trial, and that said V. did not tell the county attorney during said examining trial that his (V.'s) testimony would be substantially the same as W.'s, etc.; and that thereupon the State introduced said county attorney, who testified that said V. did make to him such statement; to all of which defendant objected, but his bill failed to show how or why this testimony was adduced, what the witness W. testified to on said examining trial; and whether the witness V. testified differently on the final trial than he did on said examining trial, it cannot be determined whether there was error in admitting this testimony.

**2.—Same—Argument of Counsel—Special Charge in Writing.**

A statement by State's attorney in his address to the jury that unless they convicted defendant, every good and respectable citizen within the county of the trial would hang his head in shame, while not authorized by the testimony, could not be cause for reversal, especially where no charge in writing was requested by appellant to exclude the same and refused by the court.

**3.—Same—Written Requested Charge Necessary.**

A reference by the State's counsel that defendant's counsel had succeeded in stocking the jury with a view to hang it, while uncalled for, is not of that character as to cause a reversal, in the absence of a requested written instruction and the refusal of the court to give the same duly reserved by bill of exceptions.

**4.—Same—Witnesses Under the Rule—Practice.**

Where the request to talk to the witnesses was made before they were placed under the rule, there was no objection to the district attorney speaking to them while they were together; the better practice would have been, however, to have authorized the attorney to talk with the witness separately, when objection was made.

**5.—Same—Charge of Court—Adequate Cause.**

A charge in the language of the statute that insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury is not adequate cause; but an assault and battery causing pain or bloodshed is adequate cause, where the appellant relied on an assault as adequate cause to reduce the homicide to manslaughter, and where the court left this question to be determined with the other facts and circumstances in evidence, was correct.

**6.—Same—Manslaughter—Correct Rule—Charge of Court.**

A charge on manslaughter announced the correct rule which stated that both passion and adequate cause to produce it must combine in order to reduce a homicide, which would otherwise be murder, to manslaughter.

**7.—Same—Charge of Court Applicable to Facts.**

See opinion for charges on manslaughter and murder which were correct in the connection in which they were given in the court's general charge, and announced correct propositions of law.

**8.—Same—Charge of Court—Manslaughter.**

Where the court, in charging the jury on manslaughter, instructed them on the subject of adequate cause, and on the subject of passion engendered by such cause; and instructed them that they could look, not only to the cause at the time of the homicide, but they could view said cause from all the circumstances in evidence bearing on that provocation; and that any condition or circumstances, or combination thereof, which is capable of creating some one or all of the conditions of mind referred to, may be adequate cause; and that the jury in determining whether adequate cause existed, could look to all the evidence in the case, etc.; and to acquit, if by reason thereof, the defendant's mind was incapable of cool reflection, it was sufficient.

**9.—Same—Facts Stated to Support Conviction.**

See opinion for evidence held to be sufficient to sustain a conviction of murder in the second degree.

Appeal from the District Court of Shelby. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The testimony showed that the defendant and deceased met at the fireplace in Joel Whitfield's store. As the deceased came up he said to defendant, "Hello Ditcher!" Defendant replied, "I am a gardener, I have been gardening to-day." Deceased walked up to the fireplace and said, among other things, "Hatchell you are mad, we carpenters are in the habit of joking each other," laughing and talking. There was some testimony that he called defendant a "pistol man," and wanted to search him for a pistol, to which defendant objected, and asked him to be let alone, and had a bystander to search him, who said defendant had no pistol. Deceased pulled off his coat to show that he was not armed and kept bantering defendant. They were told not to have any trouble, but as they walked back to the fireplace, they renewed their contention and deceased struck defendant with his hand or fist; they then clinched and defendant cut deceased with a knife which he had been whittling with when deceased came into the store. He cut him rapidly and repeatedly and severed his throat at the second or third thrust, and even cut at his throat when the deceased had fallen to the floor. Deceased was not armed and had nothing in his hands, but was physically much stronger than defendant.

The following are the instructions which the court gave on manslaughter and self-defense:

Manslaughter is a voluntary homicide committed under the immediate influence of sudden passion arising from adequate cause, but neither justified nor excused by law. By the expression under the immediate

influence of sudden passion is meant: First, that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. Second, that the act must be directly caused by the passion arising out of the provocation. Third, the passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror, rendering it incapable of cool reflection. By the expression adequate cause is meant such as would commonly produce a degree of anger, rage, sudden resentment, or terror in a person of ordinary temper sufficient to render a mind of a person of ordinary temper incapable of cool reflection.

Insulting words or gestures or an assault and battery so slight as to show no intention to inflict pain or injury, is not adequate cause, but an assault and battery causing pain or bloodshed is adequate cause. And any condition or circumstance or any combination of conditions or circumstances which is capable of creating some one or all of the conditions of mind above referred to may be adequate cause, and in determining whether or not adequate cause existed to produce anger, rage, sudden resentment, or terror the jury will look to all the evidence in the case, the previous relation of the parties toward each other, the relative strength and size of the parties. And if you find that by reason thereof the mind of the defendant at the time of the killing if any, was incapable of cool reflection and the facts and circumstances were such as to produce such state of mind in a person of ordinary temper, then the cause would be adequate and the killing under such circumstances if not justifiable would be manslaughter. In order to reduce a voluntary homicide to the grade of manslaughter it is necessary not only that adequate cause exists to produce anger, rage, sudden resentment, or terror, but that such state of mind does actually exist at the time of the killing. By this is meant that a killing which would otherwise be murder will not be reduced to manslaughter because of the existence of some one or all of the provisions referred to above, unless there was adequate cause to produce such passion, nor will a killing which would otherwise be murder be reduced to manslaughter because of the existence of adequate cause unless at the time of the killing the mind was incapable of cool reflection by reason of the existence of some one or all of the provisions above referred to. In other words to reduce a killing from murder to manslaughter there must be a concurrence of both passion, such as anger, rage, sudden resentment, or terror and adequate cause to produce such passion.

Homicide is the destruction of a life of one human being by the act, agency, procurement or culpable omission of another. Homicide is justifiable under the following limitations:

First: it must reasonably appear from the act of the deceased, or by words coupled with the acts that the deceased then intended to kill the defendant or inflict on him some serious bodily injury.

Second: the killing must take place while the person killed was in the act of killing the defendant or inflicting on him some serious bodily injury or after some act done by him showing an evident intention to

commit such offense. Self-defense is founded upon the law of nature and it cannot be superseded by any law of society, but self-defense is a defensive, not an offensive act, and it must not in any case exceed the bounds of defense and prevention. There must at least be an apparent necessity to ward off by force some unlawful and violent attack. The important questions for the jury to determine are: first, was the defendant in present danger of death, or serious bodily injury, or were the circumstances such as to afford him reasonable grounds to believe himself to be in such danger. Second, was the killing done in good faith to protect himself from such danger or apparent danger. If both these questions can be answered in the affirmative then the killing would be justifiable. A party who may be unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, and in passing upon the question as to whether or not the defendant is justifiable the fact and circumstances must be viewed from the standpoint of the defendant, and under the law he would have a right to act upon the appearance of danger, the same and to the same extent as he would were the danger real. That the danger appeared real to the defendant is all that the law requires in justifying him in acting thereon and if in this case the defendant was attacked in such a manner by the deceased considering the relative strength and size of the parties as created in his mind a reasonable expectation or fear of death or serious bodily injury then under the law he would have the right to defend himself from such attack and to continue to defend himself as long as it reasonably appeared to him as viewed from his standpoint to be necessary for his safety.

*D. M. Short & Sons,* for appellant.—Supposing that the defendant was not justified in taking the life of the deceased, yet this conduct clearly demonstrated the likelihood that defendant was enraged to a degree rendering his mind incapable of cool reflection; and this conduct is held in the Turner case to be "adequate cause." Yet the trial court tells the jury that this conduct is not "adequate cause." Turner v. State, 41 Texas Crim. Rep., 329.

The appellant rested his defense to the charge of murder upon the proposition that the deceased was a larger and stronger man than he, and that without any provocation whatever the deceased sought him out, and after abusing and vilifying him, and after discovering the defendant was unarmed, made a violent assault upon him, and that under the influence of the fear thus occasioned, he inflicted the wound on the deceased which resulted in his death. This defense involves two propositions. The first proposition is that the appearances of danger were such from the defendant's standpoint, as to justify him in doing what he did. The second is that if he was not wholly justified, yet considering all the circumstances in the case, including those transpiring at the time as well as those leading up to the difficulty itself, and embracing the difference in the size and strength of the parties, even though the defendant was not

wholly justified he was only guilty of the offense of manslaughter by reason of the fact that the testimony excludes the idea of malice, which is essential to the offense of murder; and by excluding malice establishes the existence of the statutory emotions of the mind arising from an "adequate cause." Miles v. State, 18 Texas Crim. App., 156.

The trial court's attention was directly called to the failure of the charge to present affirmatively these two propositions, both of which are abundantly presented by the testimony, yet, the court confined the jury to the existence of "adequate cause" produced by an assault causing pain or bloodshed, and informing the jury that insulting words or jestures or an assault and battery so slight that to show no intention to inflict pain or injury is not "adequate cause." This was an unwarranted restriction of the rights of appellant, and in view of the verdict, likely influenced the jury in determining the offense of which the appellant was guilty. Baltrip v. State, 30 Texas Crim. App., 545; Cochran v. State, 28 Texas Crim. App., 422; Orman v. State, 24 Texas Crim. App., 495; Howard v. State, 23 Texas Crim. App., 265; Spangler v. State, 2 Texas Ct. Rep., 143.

On the proposition of affirmatively presenting the issue of self-defense: Bell v. State, 17 Texas Crim. App., 538; Boddy v. State, 14 Id., 528; Tillery v. State, 24 Id., 251; Morrison v. State, 37 Texas Crim. Rep., 601.

*Blount & Garrison,* also for appellant, filed a motion for rehearing.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, the punishment being assessed at confinement in the penitentiary for a term of five years; hence this appeal.

Appellant reserved a bill of exception to the action of the court in regard to the testimony of E. H. Carter, county attorney. The bill presenting this matter is in this wise: "The State, through its district attorney, read before the jury, the following statement of the witness Vaughan, who had testified before, in behalf of defendant on the examining trial, wherein said Vaughan stated, he was present during the examining trial and that he heard one Joel Whitfield testify; and that he did not tell E. H. Carter, the county attorney, that his evidence would be substantially the same as Whitfield's, and if he wanted him to, he would adopt Whitfield's evidence as his own, whereupon the State then introduced E. H. Carter, county attorney, who testified that Vaughan did tell him immediately after Whitfield had testified that he, Vaughan, would testify substantially the same, and that he would adopt Whitfield's statements as his own, if he desired it." Appellant objected to said evidence because the same was irrelevant, immaterial and prejudicial to the rights of the defendant, because it was an attempt on the part of the State to impeach the witness Vaughan upon an immaterial issue; because there

was no evidence introduced as to what witness Whitfield testified in the examining trial; nor did the State introduce or prove that said Whitfield testified in the examining trial the same as he did in the present trial, no evidence being introduced to show that witness Whitfield testified at the inquest trial, that he was present and saw the difficulty, and the jury was not informed in any way that Whitfield testified on the inquest trial. The court explains this bill by stating, that Whitfield did testify on the examining trial, and that the witness Vaughan heard the testimony. We do not regard the explanation as relevant, or affording any reason for his action in the premises. An examination of the bill fails to disclose how or why this testimony was adduced. It is not shown what the witness Whitfield testified on the examining trial, and it is not shown that the witness Vaughan testified differently on this trial from what he had testified before the examining court. The grounds of objection are not a part of the bill in this respect. The facts attending the introduction of the evidence and connected therewith, should have been stated. It may be, under proper circumstances or conditions, the testimony might have been admissible. At any rate, not having the testimony before us, we cannot determine that its admission was calculated to prejudice appellant.

Bills 3 and 4 embody exceptions to the argument of the district attorney. In the first of these bills it appears that the district attorney stated, "This defendant is guilty of one of the most cruel and diabolical crimes ever committed in this county; and you cannot as good citizens of this county turn this defendant loose, and I want to tell you, if you do, every good respectable citizen within the borders of Shelby County will hang their heads in shame." The first portion of this statement of the district attorney may have been a proper deduction from the testimony and may have been permissible. As presented, we cannot say it was not. The last portion, however, tells the jury, in substance that unless they convict appellant, every good and respectable citizen within this county would hang his head in shame, could not be authorized from the testimony. It has been held that an invocation or appeal to the jury by a menace of this sort, is not permissible. However, no charge in writing was requested on the subject and refused by the court; and we do not regard it of that character which would authorize a reversal. And again, the district attorney in his argument is shown to have made these remarks,—"The defendant, unlike the hyena who digs in the grave for the body of the dead and buried, while the defendant revels in living streaming blood of his victim; that he took the life of Old Man Judge and walked away from his lifeless body with blood dripping from his hands, calm, cool and deliberate; and his attorneys come here and ask you to acquit him. It may be that defendant's counsel have some one man on this jury whom they expect to hang it, and no doubt expect by such means to induce and persuade some one to hang it, but you Askew, you Wes Darnell nor you Bob Williams can't afford to hang the jury." The court explains as to this latter portion that the counsel for defendant in their address to the jury had called names of Turner and others, and the dis-

trict attorney in referring to that matter had used the language. We held in Kugadt v. State, 38 Texas Crim. Rep., 681, referring to defendant as a hyena, in the connection in which it was used, did not constitute reversible error. In that case, the court immediately reprimanded counsel for the State and instructed the jury to disregard the same. In this case, however, while there was an attempt to differentiate between defendant and a hyena, it was rather to the disparagement of defendant. The court's explanation, that the district attorney referred to the jurors by name, because defendant's counsel had done so, may explain that matter. But it hardly explains the reference. that appellant's counsel had succeeded in stocking the jury with some man to hang it. These remarks were uncalled-for and reprehensible; but no written request was made of the court, instructing the jury to disregard the same. We do not believe that they are of that character, as to cause a reversal, in the absence of such requested written instruction, the refusal of the court to give the same, and exception reserved thereto.

We do not believe the action of the court, with reference to permitting the district attorney to talk with the witnesses while they were together was error. The court explains that this request was granted before the witnesses were placed under the rule, though after the rule had been invoked. The better practice would have been, when objection was made, to have authorized the district attorney to talk with the witnesses separately.

Appellant objected to that portion of the charge of the court as follows: "Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, is not adequate cause; but an assault and battery, causing pain or bloodshed, is adequate cause." This is the language of our statute on the subject; and appellant relied on an assault, as adequate cause to reduce the homicide to manslaughter. The court properly left the question as to whether or not under the circumstances, the assault caused pain, or whether the assault, in connection with the other facts or circumstances in evidence, was such as to afford adequate cause.

And again, this portion of the charge of manslaughter, is objected to: "In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause exist to produce anger, rage, sudden resentment or terror, but that such state of mind does actually exist at the time of the killing. By this is meant that a killing which would otherwise be murder will not be reduced to manslaughter, because of the existence of some one, or all of the provisions referred to above, unless there was adequate cause to produce such passion; nor will a killing which would otherwise be murder be reduced to manslaughter because of the existence of adequate cause, unless at the time of the killing the mind was incapable of cool reflection by reason of the existence of some one, or all of the provisions above referred to. In other words, to reduce a killing from murder to manslaughter there must be a concurrence of both passion, such as anger, rage, sudden resentment or terror, and ade-

quate cause to produce such passion." This charge was objected to, as erroneous on several propositions; but in our opinion, it announces a correct rule of law. That is, our statute requires that both passion and adequate cause to produce it, must combine in order to reduce a killing which would otherwise be murder to manslaughter.

This portion of the charge on manslaughter is also objected to,—"But if you find, beyond a reasonable doubt, that the defendant is not justifiable, and you find that defendant cut and killed Judge with a knife, under the immediate influence of sudden passion, arising from some adequate cause, then you will convict him of manslaughter." And again, "If you find that defendant cut and killed F. Judge with a knife, and you find that, beyond a reasonable doubt, he was not justifiable; and you further find, beyond a reasonable doubt, that at the time of such killing (if any) he (the defendant) was not laboring under the influence of passion, such as anger, rage, sudden resentment or terror, arising from some adequate cause, then you will convict him of murder." In our view, both of said charges, in the connection where they occur in the general charge given by the court, not only announce correct propositions of law, but were applicable to the case. The latter instruction is not incomplete in the connection wherein it was used, but very properly required the jury to believe beyond a reasonable doubt, before they could find him guilty of murder, that he was not justifiable, and then to believe beyond a reasonable doubt that he was not guilty of manslaughter. That is, he was not laboring under the influence of passion engendered by an adequate cause at the time of the homicide.

Appellant complains that the court failed to deliver to the jury all of the law of manslaughter applicable to the case, and sets out in his motion for new trial the elements which he insists should have been given to the jury on that subject. We do not deem it necessary to quote the entire charge of the court on the subject of manslaughter; but an examination of the court's charge shows the court instructed the jury on the subject of adequate cause, and on the subject of passion engendered by such cause; and instructed them that they could look, not only to the cause at the time of the homicide, but they could view said cause from all the circumstances in evidence bearing on that provocation. Besides, it instructed the jury that, any condition or circumstance, or any combination of conditions or circumstances, which is capable of creating some one or all of the conditions of mind above referred to, may be adequate cause; and in determining whether or not adequate cause existed to produce anger, rage, sudden resentment or terror, the jury will look to all the evidence in the case, previous relation of the parties towards each other, the relative strength and size of the parties; and then told the jury, if they should find by reason thereof, the mind of defendant at the time of the killing was incapable of cool reflection, and they believed the facts and circumstances were such as to produce such state of mind in a person of ordinary temper, then the cause would be adequate, and a killing under such circumstances, if not justifiable,

would be manslaughter. It occurs to us, taking the whole charge together, it is an admirable presentation of this phase of the case in connection with the facts in evidence; and it was not necessary to have gone farther, as is insisted by appellant.

We have also examined the· charge on self-defense, and it properly presented that issue to the jury.

Appellant complains that the verdict of the jury is not supported by the evidence. We cannot agree to this contention. True there is some testimony tending strongly to show that deceased brought on the difficulty, first calling appellant a "ditcher," evidently intended to disparage him, to which appellant replied, he was not a ditcher but a gardener, as he had been working in the garden that morning. He then accused appellant of having a pistol on him, and wanted to search appellant. This appellant was not willing for him to do; but authorized another person present to search him. Then, after some words between the parties it seems the fight began. The testimony tends to show appellant did not strike the first blow, yet deceased only struck him with his hands. There is no testimony tending to show he offered to strike him with anything else. Appellant at the first began to cut and slash deceased with his knife; and evidently continued to cut and stab deceased when it was no longer necessary. After he had vitally stabbed him in several places, and after deceased had fallen to the floor, and his life-blood was gushing out, one or two witnesses state he reached down and caught deceased by the ear and continued to cut his throat. We apprehend the jury took the view that there was no necessity for him to have used the knife in his self-defense, but there was enough of brutality in his onslaught to indicate that he was instigated by malice, while the jury found him guilty of murder in the second degree and gave him the lowest penalty for that offense. If the charge of the court had been unfair with reference to self-defense or manslaughter, appellant might have some reason to complain, but we fail to find any such ground for complaint in this record.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]