### CRAWFORD v. STATE.

(Court of Criminal Appeals of Texas. Jan. 17, 1912. On Motion for Rehearing, May 8, 1912.)

1. INTOXICATING LIQUORS (§ 223*)—SALES—EVIDENCE.

Where accused selling whisky received the money from prosecutor, and delivered the whisky to him, the fact that a third person furnished to prosecutor a half of the price before meeting accused did not make the sale a joint one to prosecutor and the third person.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 263–274; Dec. Dig, § 223.*]

2. CRIMINAL LAW (§ 598*)—CONTINUANCE—ABSENCE OF WITNESSES—DILIGENCE.

Where accused, though informed against on December 15th, had no process issued for a witness until January 6th following, and he was on the following day informed by the sheriff that the witness had gone to another county and no other process was issued for him, and there was nothing to show that, if process had been issued, his attendance could not have been procured on the trial on January 9th and 10th, an application for a continuance on the ground of the absence of the witness was properly denied for want of diligence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1335–1341; Dec. Dig. § 598.*]

3. CRIMINAL LAW (§ 596*)—CONTINUANCE—ABSENCE OF WITNESSES.

Where accused, applying for a continuance on the ground of the absence of the witness, has another witness present in court to prove the fact which he claimed he could prove by the absent witness, the denial of a continuance is not erroneous.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1328–1330; Dec. Dig. § 596.*]

4. CRIMINAL LAW (§ 596*)—CONTINUANCE—ABSENCE OF WITNESSES.

It is not error to deny a continuance on the ground of the absence of a witness to prove a fact established by several witnesses, and not disputed by the state.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1328–1330; Dec. Dig. § 596.*]

5. CRIMINAL LAW (§ 595*)—CONTINUANCE—ABSENCE OF WITNESSES—ISSUES.

Where the state on a trial for the violation of the local option law negatived the idea that accused kept the liquor for sale in a gin, the denial of a continuance on· the ground of the absence of witnesses who would prove that accused did not keep liquor in the gin was not erroneous.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1311, 1323–1327; Dec. Dig. § 595.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

6. CRIMINAL LAW (§§ 594, 913*)—CONTINU-
ANCE—ABSENCE OF WITNESSES—GROUNDS.

Where accused applying for a continuance on the ground of the absence of a witness showed that the witness could not leave home because his wife was in a delicate condition, and the state, on the trial, after a denial of the continuance, proved that the wife was not sick and that the witness did not stay at home, and the witness by affidavit several days after the trial did not show that his wife was in a delicate condition, the denial of the continuance and refusal to grant a new trial on the ground of the absence of the witness was not an abuse of discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1321, 1322, 1332; Dec. Dig. §§ 594, 913.*]

7. CRIMINAL LAW (§ 695*)—EVIDENCE—AD-
MISSIBILITY.

It is not error to receive in evidence accused's motion for a continuance on the ground of the absence of witnesses who would testify to facts therein alleged as against the objection that the motion is irrelevant and immaterial to any issue in the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1633–1638; Dec. Dig. § 695.*]

8. CRIMINAL LAW (§ 728*)—IMPROPER AR-
GUMENT OF COUNSEL—OBJECTIONS.

It is not error to overrule objections to the argument of the county attorney, where no specific objections thereto are made.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1689–1691; Dec. Dig. § 728.*]

9. CRIMINAL LAW (§ 1159*)—VERDICT—CON-
CLUSIVENESS.

The jury are the exclusive judges of the facts and the credibility of the witnesses, and a verdict on conflicting evidence and supported by evidence, if believed, will not be disturbed on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. § 1159.*]

On Rehearing.

10. CRIMINAL LAW (§ 1133*)—WAIVER OF OB-
JECTIONS—TIME.

An objection made for the first time in the motion for rehearing that an information for selling liquor in prohibition territory is defective for failing to allege the date of the election by which prohibition was put in force comes too late.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2984; Dec. Dig. § 1133.*]

Appeal from Wise County Court; E. M. Allison, Judge.

Andy Crawford was convicted of selling intoxicating liquors in local option territory, and he appeals. Affirmed.

R. E. Carswell and Robt. Carswell, both of Decatur, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Upon complaint and information the appellant was charged with unlawfully selling to Estell Furlow intoxicating liquors on December 6, 1910. He was convicted and fined $50, and given 30 days in jail.

The state proved by said Furlow that he was 20 years old; that he lived, and had lived for many years, at Alvord, Tex.; that on December 6, 1910, he bought from appellant one pint of whisky at Alvord, in Wise county, and paid him $1 for it; that John Graham was with him at the time; that he and Graham started from the main street of the town down to the Malone gin, situated about 300 yards from the main street; that they met defendant coming from the gin, and asked him if he had any whisky; that he denied it; then they told him they had to have some, and were going to get it if it could be found. Appellant then said he might get it for them. "I saw a pint bottle in his overcoat pocket. I handed him a dollar, and he took it, and asked me to go to the gin with him. I went into the gin with him, and he gave me the pint of whisky." This was in the forenoon about 11:30 o'clock. Appellant took the whisky out of his pocket when he delivered it to the witness.

The other witness, John Graham, testified that he was 21 years old, lived, and had lived for many years, on a farm with his mother about one mile from Alvord; that on December 6, 1910, he was with said witness Furlow; that they started from the main street to the Malone gin, and met the defendant about half way; that they proposed to buy some whisky from him; that he first denied having any, but after awhile agreed to let them have it; that Estell Furlow paid him a dollar; that he had paid to Estell Furlow 50 cents of the money up town before they went down there; that defendant then went to the gin, Estell going with him; that Graham remained where they were; that Estell returned with the pint of whisky.

Both of these witnesses testified that Mr. Ratliff, the county attorney of Wise county, had an arrangement with Furlow by which he was to catch bootleggers in Alvord and agreed to pay him $2.50 cash for every case reported to him and $2.50 more where the party was convicted; that, when they got this whisky, they marked the bottle, the date of the purchase, and reported to Mr. Ratliff, who then paid Furlow; that he got John Graham to go into the matter with him as his partner, and he divided with him half and half.

Furlow further testified that where they met the appellant at the time, half way between the gin and the main street, there was a lumber yard and houses close by, "and I suppose that was the reason defendant wanted us to go to the gin to get the whisky." It was admitted on the trial that what is known as the local option law had been in force in Wise county for many years before December 6, 1910, and was in force on that date.

Appellant himself testified that he had a family, wife, and children, and then lived and had for many years lived at Alvord, in

---

Wise county; that during the cotton ginning season of 1910 he worked at the Malone gin, except a portion of the time, when he was employed by the government to get up gin statistic reports; that among other places included within the district where he had to procure these statistics were Alvord, Decatur, Rhome, Boyd, and Newark, in Wise county, and while he was not engaged in that work he was at work at the gin; that under his employment by the government to get these statistics he had to report on the 7th of each month; that on the 5th of December, 1910, he made his final round for that month, going to Boyd, Newark, and Rhome, and returned, taking the train at Rhome on the morning of December 6, 1910, and reaching Alvord about 10 o'clock that morning; that he went directly from the depot to his house, and went to work on his monthly report, and stayed at home all that day working on the report; that he did not leave his house that day, and did not go about the gin or to town, and denied seeing either Furlow or Graham, and denied selling to them or either of them any whisky on that or any other day; that he had no whisky, had been nowhere to get any; that all of the places he mentioned where he had been to get statistics were in Wise county, and no whisky was kept or sold at either of those places so far as he knew. He denied that either Furlow or Graham had ever given him any money for, or that he had delivered to them, any whisky; that R. L. Taylor was the foreman and manager of the Malone gin at and prior to December 6, 1910, and he worked under his direction when he worked at the gin, and, when the gin was not in operation, said Taylor stayed there and watched the gin; that it was not in operation on December 6, 1910.

The statement of facts shows that four persons, naming them, and many other citizens of Alvord, testified that they had known appellant in and about Alvord for many years, knew his general reputation for truth and veracity, and for being a peaceable and law-abiding and orderly man, and that such reputation was good. The state also proved by Mr. Branch, the sheriff of Wise county, that E. M. Layton was present at the trial attending the court; that on January 7th he attempted to summon the witness Railey, and found that he had left Wise county, and gone to Hardeman county, and told defendant of that fact. It was admitted that no further process had been issued for that witness. The state also proved by Rev. Wells that he was a near neighbor of the witness Taylor for whose absence the motion for a continuance was made; that he got butter and milk at Taylor's house, and Taylor was at his house on January 7, 1911, and said witness' wife was up and at work at that time, and Taylor was at work at a gin about one-fourth of a mile from his house, and that on the morning before the trial he had seen her standing in Taylor's yard. The state also introduced in evidence the appellant's motion for continuance to which particular attention will hereafter be called.

[1] Appellant complains of the action of the court in refusing to give his special charge to the effect that, if the intoxicating liquors in question were sold by appellant to Furlow and Graham jointly, to acquit the appellant. The evidence did not justify any such charge, even though Graham testified he furnished to Furlow one-half of the money before they met the appellant, with which the whisky was bought. Kennard v. State, 141 S. W. 88; Miles v. State, 138 S. W. 398, and cases cited in both of said cases.

Next appellant complains that the court erred in overruling his motion for a continuance or postponement of the case. This application to continue or postpone was made on account of the absence of R. L. Taylor, E. M. Layton, and Tom Railey. The application first states that all the parties were residents of Alvord, in Wise county. It also states "that said Tom Railey resides in Wilbarger county, Tex."; that on January 6, 1911, he had a subpoena issued to Wise county for all three of those witnesses, he believing at that time that they all resided in Wise county, but that on January 7th he was informed that Railey had left there about 10 days before that for Wilbarger county; that he expected to prove by Taylor and Layton as follows: "That at the time of the alleged sale of the intoxicating liquors to Estell Furlow, and for a long period prior thereto, the defendant worked at the gin at Alvord operated by R. L. Taylor, and worked under the observation and control and direction of said Taylor, and said Taylor will testify that the general character of defendant for being a peaceful and law-abiding man in the community is good, and that he will further testify that during said time and at the time said liquor is charged to have been sold this defendant kept no whisky or intoxicating liquors in or about said gin, and did not handle any such liquors, these facts will become material on the trial of this case in view of the testimony of the said Furlow, who defendant is informed and believed will testify that this defendant sold and delivered him the liquor in question at said gin and kept said liquor in said gin, and defendant expects to prove the same facts by the witnesses Layton and Railey who worked at said gin; that is, that witness Layton worked at said gin, and Railey was in and about said gin during the time said liquor was said by said state witness to have been sold and delivered." No reason is shown by the application for the absence of any of the witnesses except Taylor. Taylor was not there because his wife was sick and about to be confined, and the witness was unable to leave her to attend this court.

One ground of the motion for new trial

was the assigned error of the court in overruling said motion for continuance. As a part of the motion for new trial appellant attached the affidavit of said Taylor, who swore that he had known appellant intimately for the past two years; that he, Taylor, had had charge of and operated the Malone gin in Alvord, and that appellant worked under his constant direction and observation while appellant was so at work; that he knows the general reputation of said Crawford for truth and veracity and for honorable law-abiding deportment and character, and that it is good; that since affiant had been operating said gin said appellant had not kept any intoxicating liquors in or about the gin, to the best of his, affiant's, knowledge, that on December 6, 1910, affiant was at, in and about the gin about 8 o'clock in the morning and until noon, when he went home for his dinner, returning to said gin about 1 o'clock, p. m.; that it was his duty as operator of said gin to be and remain about it when not in operation, to care for it, and see that no person came or loitered about and to see who came in and about it; that on December 6, 1910, the gin was not being operated, and that while he was there appellant and Furlow and neither of them came to said gin, or was in or about it while affiant was there; that, if they had been there on said day about 11:30 o'clock a. m., he did not see them, to the best of his knowledge; that since appellant has been working at said gin affiant has not seen or known of him having any intoxicating liquors in or about it; that he was summoned as a witness in this case in behalf of defendant to appear on January 9, 1911; that he did not attend on that or any subsequent day, because his wife was in a delicate condition, expecting to be confined in childbirth at any hour, and her physician advised him to at all times remain in calling distance of her, and he was afraid to leave home to come to Decatur, a distance of 15 miles, for fear she would be taken down in his absence, and he unable to reach her in proper time; that his physician gave him a certificate in substance to that effect, and he gave it to A. M. Stone, justice of the peace at Alvord, who was attending this court on January 9, 1911, and requested him to hand the same to the court; that appellant requested affiant to attend the court as a witness in his behalf, and urged him to do so on January 9, 1911, and on the night of January 9, 1911, appellant again phoned to him at his home, urging him to come on January 10th, and testify in his behalf, but under the advice of his physician he was unable to do so, and but for his wife's condition he would have attended court on January 9th and 10th, and testified as set out in his affidavit.

[2] The complaint and information were filed on December 15, 1910. As shown by appellant's application, he had no process is-

sued for any of his three absent witnesses until January 6, 1911. He was informed by the sheriff on January 7, 1911, that his witness Railey about 10 days before that had gone from Wise to Hardeman county. He says in his application that he resided in Wilbarger county. The case was not tried until January 9 and 10, 1911. After being informed on the 7th that his witness Railey had been subpœnaed, he had no other process issued for him. If he had had process issued much earlier, which he could have done with certainty, and gotten this information in ample time to have gotten him from either Wilbarger or Hardeman county, no reason is shown why he could not have had process issued for him to either or both of those counties on January 7th, and procured his attendance on the trial on the 9th and 10th of January following. So that, as to said witness, the application was wholly insufficient to show any diligence. Mitchell v. State, 36 Tex. Cr. R. 299, 300–307, 33 S. W. 367, 36 S. W. 456.

[3] As to his witness Layton, it was shown by the testimony of the sheriff on the trial that he was in attendance on the court and present at the trial. The appellant did not introduce him, although in his application he swore that he could prove by him the same thing that he could prove by Taylor. In Blain v. State, 34 Tex. Cr. R. 452, 31 S. W. 370, where it was shown that a number of witnesses had been summoned as to an issue and some of them were in attendance and not placed upon the stand, the appellant could not claim a continuance on account of the absence of other witnesses upon the same point; the court saying: "Defendant should have exhausted the testimony presented before he could claim a continuance on account of the absence of other witnesses upon the same point."

[4] As to that part as to what appellant expected to prove by his witness Taylor as to his general reputation stated therein, this was proven as shown by the statement of facts by four witnesses named therein and a large number of others and that fact was not disputed by the state; so that, as to that, there was no error in overruling appellant's motion for a continuance.

[5] The state did not prove, or attempt to prove, on the trial that the appellant kept liquor in or about said gin, and there was no evidence of the state tending to show that he did keep liquor there for sale. On the contrary, the state's testimony repelled such an idea. So that it was not necessary for appellant's defense that he had the witness Taylor there to testify to any such fact. Besides, as stated above, the witness Layton by whom he said he could prove substantially the same thing attended his trial as a witness, but the appellant did not introduce him to prove any such fact.

[6] It was also proven by the state on the

trial that Taylor's wife was not sick, but was up and at work, and that said Taylor did not stay at his home, but was off at work as usual. His affidavit was made on January 17th, and up to that time no showing made that his wife was in the condition he claimed she was in, and as the whole matter, under the law, was left to the discretion of the lower court in overruling the application for a continuance, and not considering the matter again on the motion for new trial, we cannot say that he has abused his discretion to such an extent, under all the circumstances, as to authorize or justify us to reverse this case on that account.

[7, 8] Again, appellant complains by bill of exceptions of the introduction by the state of his motion for a continuance, because it was irrelevant and immaterial to any issue in the case, and calculated to prejudice and improperly influence the jury in the consideration of the cause. In this same bill he objected to the argument of the county attorney in commenting upon the appellant's conduct as shown by his said application for continuance, wherein it was alleged that the county attorney had said: "You see how these bootleggers do. First announced not ready for trial, and wanted to put off the case and delay the court, and, in order to do so, presented this motion for continuance [exhibiting the motion], and in it swore point blank lies, said the witness Taylor could not be here because his wife was sick, when we know by the testimony of a witness here that she was standing in the yard of her husband yesterday morning. That is the way they do, first try to put off a trial as long as possible by any sort of pretext, whether true or not." The only complaint shown by his bill made to this is thus stated: "To which language defendant by his counsel objected, and asked the court to stop counsel and withdraw such language from the jury, which the court refused to do, to which conduct defendant excepted." It will be seen by this that no reason is given showing that the appellant was in any way injured by this. In our opinion the introduction in evidence of appellant's motion for continuance, instead of in any way being calculated to prejudice or improperly influence the jury against him, would really have been in his favor. At any rate, the court did not err in not excluding it on the grounds of objection made thereto. Nor did the court err in not sustaining appellant's objections to the argument of the county attorney on the objections made, or rather because no specific objections were made. Besides this, the appellant did not request the court to give any written charge to the jury directing it not to consider the said remarks of the county attorney. Hatchell v. State, 47 Tex. Cr. R. 385, 84 S. W. 234; Felder v. State, 59 Tex. Cr. R. 144, 127 S. W. 1055; Kennedy v. State, 19 Tex. App. 634; Lancaster v. State, 36 Tex. Cr. R. 20, 35 S. W. 165. A great number of other cases might be cited but it is unnecessary.

[9] As we have had frequent occasion to say before, the law explicitly makes the jury the exclusive judges of the facts in criminal cases, the credibility of the witnesses, and the weight to be given to their testimony. They hear and see the witnesses, and have a very much better opportunity of judging of their truthfulness than any court can have from a mere transcript in writing of that testimony. It may be, as appellant contends, that he has been wrongfully convicted, and that he ought not to be convicted on the testimony of the state. He has shown an unquestioned good character. The only legal question that can be based upon this subject is whether or not the record, as presented to us, shows that the evidence was sufficient to sustain the verdict, and, where that is the case, we are unauthorized to set aside a verdict and reverse a case. If it were otherwise, and this court, in contested matters of fact, could, from the record, decide the question differently from what the jury did, then this court would be usurping an express power given to the jury and the judge of the lower court, and this court, and not the jury in the lower court, would have to judge of the credibility of the witnesses and the weight to be given to their testimony. No such authority is given to this court.

There being no reversible error shown, the judgment will be affirmed.

### On Motion for Rehearing.

[10] For the first time appellant, by his motion for rehearing, urges that the complaint and information are fatally defective in this cause, because the date of the election by which prohibition was put in force in Wise county is not alleged therein. Appellant made no motion to quash either the complaint or information in the court below on that account, nor in any other way in the lower court nor in this court until his motion for rehearing raised the question. This court has fully considered this question and held against appellant in the cases of Meyer v. State, 145 S. W. 919, and Hamilton v. State, 145 S. W. 349, wherein the question was fully discussed and the authorities cited. It is unnecessary to again discuss the question.

All the other questions again presented by the motion for rehearing were discussed and correctly decided against appellant in the original opinion. It is unnecessary to discuss any of the questions again.

The motion is overruled.