Kinkead, J.
The indictment charged defendant with first degree murder by cutting the throat of the deceased with a razor. All the large vessels of the neck were severed; the wind pipe was cut; the carotid arteries were cut. 'The cut was a very deep one, extending clear back to the spinal column. The wound was necessarily fatal, and death resulted in a few moments.
All of the organs of the body were normal. The cause of death was a cut throat; secondary cause, hemorrhage.
The evidence clearly disclosed previous ill-will, malevolence, threats, and admissions that he had previously formed the design to take the life. It is not necessary to set them forth in detail: they are to bo found in the record. Acts of preparation and determination to kill are clear and distinct. The girl had refused his attentions and defendant had become enraged. On the occasion of the fatal visit to the house where deceased was employed, being unable to gain admission at the kitchen door, defendant went to another part of the house which was occupied by another family. When the door -was opened by a lady he insultingly and rudely inserted his foot in the doorway and prevented its being closed. He forced himself into *67 the house, and failing- to find his victim downstairs he forced his way upstairs by forcibly breaking- open the door leading from the dining room and ran upstairs. The door of the bed room where deceased had endeavored to secrete and protect herself was locked, but defendant forcibly broke it down. Deceased endeavored to run out and past defendant, but he caught her, and deliberately cut her throat in the presence of one of the ladies of the house, after having deliberately, quietly and politely asking her to step away.
The evidence clearly established antecedent threats, menaces, sullen malevolent spite and conduct, and admissions thereof by defendant.
It was a clear, typical case of first degree homicide.
On motion for new trial the contention is advanced that the court might have unwittingly produced some sort of influence on the jury by the charge given on the question of manslaughter and assaúlt and battery, and the decision of the court not to send to the jury forms of verdict for assault and battery.
Counsel for the defense contend that it has been the practice for many years to charge the jury upon all the elements of homicide including assault, assault and battery, and to send to the jury forms of verdict covering these lesser degrees of crime, in order that it might have an “untrammeled opinion as to their verdict without any suggestion from the court.” Counsel question whether the jury “were given absolute freedom by the court. ’ ’
As stated orally by the court the jury was not given untrammeled opinion as to their verdict and designedly not; under the charge the jury could only lawfully render a verdict for murder in the first or second degree,. although it might have rendered a verdict for manslaughter. But counsel suggest: Suppose the jury had rendered a verdict for a lesser degree of crime, could the court have set it aside? The judge must instruct the law applicable to the evidence. The answer is that the court is powerless to prevent such a miscarriage of justice.
A charge in criminal as well as in civil'cases must accurately present to the jury the questions presented by the indictmem and the evidence. Failure to correctly do this constitutes re versible error.
*68 But it is no legal sin to err against the state, and prosecutors seldom feel justified in prosecuting exceptions for the correction of an evil practice. Therefore, as long as trial courts travel along the path of least resistance, we are likely to move along in the old ruts of formalism.
The mind of the jury should be so quickened by the charge of the court that it may understand the law, and properly apply it to the ultimate facts deduced from the evidence. It should.be made to understand that the law of the instruction or rule of law stated therein has no relation to matter foreign to the evidence.
The charge or forms of verdict submitted should not make it possible for the jury to render a verdict which is not supported by any evidence, 'and thus contribute to a miscarriage of justice.
It has long been an unjustifiable practice in this state to instruct the jury as to the degrees of the homicide, including assault and battery, regardless of the fact whether the evidence sustains or warrants it.
The jury is thus given to understand that it is permitted to return any one of the forms of verdict from first, degree homicide to simple assault, regardless of the evidence, when there is no evidence tending to sustain any of the lesser offenses.
We have thus been slaves to custom and senseless formalism long enough. . Trial courts have pursued this- course rather by way of precaution, and without regard to law.
It is fundamental that an instruction to the jury must be founded on the claims of the parties made by the evidence. But no instruction should be given upon any phase of criminality embraced therein if there is no evidence tending to sustain it.
In this case there was no sudden quarrel, no heat of blood as in pure type of manslaughter; there was no provocation — no adequate provocation. The deceased on learning that defendant was at the house to see her ran away from him, locked herself in a bed room. There is no evidence of words or quarrel — nothing but cool deliberate determination to kill— carefully planned and executed.
*69 In order to precisely show how the questions were submitted to the jury, the material parts of the charge are here set forth:
“Murder in First Degree.
“Murder in the first degree consists in taking the life of another purposely and with deliberate and premeditated malice,
“Specific intent to kill with deliberate and premeditated malice are the essential elements of this degree of homicide.
“Intent, purpose to kill, deliberate and premeditated malice are manifestations'of the mind.
“While intent and malice are both descriptive of the mind, malice denotes a wicked purpose which characterizes the perpetration of a criminal act, and qualifies the intent and mind of the slayer.
“In first degree murder it is essential that the accused shall have formed the intent and purpose to kill, that he must have thought it over and deliberated upon it for some period of time and then to have carried it into execution.
“If the purpose to kill be the conception of but a moment, if it be thought over and considered by the accused for a short or long period of time, and is then carried out by the act of killing, it is done with deliberate and premeditated malice.
“Malice in First Degree.
“Malice in first degree murder must be express or actual as distinguished from implied malice, the characteristic of the second degree.
“Malice denotes the condition of mind of one who commits crime; it is not restricted to mere spite or malevolence toward the person killed; it is descriptive of the state of mind of one accused of murder; it is indicative of general malignity of mind, of reckless disregard of human life which proceeds from a mind devoid of just sense of appreciation of social duty and moral and legal obligation to mankind and womankind. It denotes wicked intention, depraved nature and inclination to mischief or injury, intention to injure without just cause or excuse; a wanton disregard of the right, safety or life of others.
“Intent and Malice, How Proved in First Degree Murder.
“Intent to kill, express or premeditated malice being essential manifestations of the mind to be proved in first degree murder, may be revealed or shown by acts, conduct, ill-will or one accused of this crime, as well as by threats made.
“To show deliberate and premeditated malice, or that an accused killed another with a sedate, deliberate mind and prior *70 formed design, there must be something more than the use of a deadly weapon in a manner purposely calculated to produce death. Deliberate and premeditated malicious purpose to kill may be manifested in different ways, as by antecedent menaces or threats, former ill-will, secret enmity or sullen malevolence towards the deceased, or by any other acts or circumstances calculated to disclose an inward fatal purpose or intention of the accused towards his victim.
• ‘ Intention to kill may be presumed or inferred under certain conditions and circumstances; and it may also be specifically shown by acts, threats or conduct.
“Whatever a man intentionally and willfully does, he is presumed to have intended to do; he is presumed to intend the natural and probable consequence of his voluntary and deliberate act, unless the facts and circumstances indicate otherwise.
“In this state there is no presumption of law of an intent to kill from the use of a deadly weapon. The effect or responsibility for the use of a deadly weapon by one accused of murder is within the sole province of the jury to determine from the character of the weapon and the manner of its use.
“If one accused of murder is shown to have intentionally used a deadly weapon, in such manner as satisfies the mind of the jury that it was purposely calculated to cause death, and death follows the infliction of a mortal wound, in such case the jury may infer that the slayer intended to maliciously kill his victim.
“Such deduction by the jury is characterized as implied intent to kill, and implied malice, which is sufficient to convict an accused of murder in the second degree. But as already stated it is insufficient to convict of first degree murder, further evidence of deliberate and premeditated malice, or of prior premeditated design being essential to sustain a verdict of murder in the first degree, such as prior menaces or threats, former ill-will, secret enmity, sullen malevolence towards the' deceased as before stated.
“The evidence must show that the accused formed a purpose to kill, that he deliberated upon it for some period of time before the act of killing — the length of time not being material. It must appear that defendant formed the purpose to kill, that he thought it over, deliberated upon it, then committed the act of killing.
“If the jury finds that defendant purposely killed the deceased with deliberate and premeditated malice, your verdict should be one of guilty of murder in the first degree. If this should be your verdict the defendant shall be punished by death unless the jury recommends mercy, in which case the punishment shall be imprisonment in the penitentiary for life. If the *71 jury considers it proper and just under the circumstances to recommend mercy, it may do so. If it considers that the facts and circumstances do not warrant such recommendation, it may not make it.
“The matter of making such recommendation, or not making it, is within the exclusive discretion and judgment of the jury.
“If the jury should entertain a reasonable doubt of the guilt of defendant of murder in the first degree; that is if you should have a reasonable doubt as to whether the defendant took the life of the deceased purposely and with deliberate and premeditated malice, then you should resolve that doubt in his favor and acquit him of murder in the first degree.
“If this should be your finding, then you will consider his guilt or innocence of the crime of murder in the second degree.
“Murder in the Second Degree.
“Murder in the second degree is the act of purposely and maliciously killing another.
“It consists of an intentional malicious killing, but without deliberate and premeditated malice.
“The essentials of this degree are intent to kill and killing with malice.
‘ ‘ Intent to kill may be shown, in the same way as in murder in the first degree; that is, by the use of a deadly weapon in such manner as is purposely calculated to take life. The jury may infer the intent to kill from the manner of using the deadly weapon, if it is satisfied that it was purposely calculated to produce death. The rule has already been sufficiently explained.
“Malice in second degree is implied and not actual or express as in the first degree. It has the same general meaning in both degrees as already explained, except that in this degree of homicide it is not accompanied by deliberation and premeditation.
“There is no deliberate mind or formed design to take life in second degree, the act of homicide being committed without justification or excuse, and without provocation to reduce the offense to manslaughter.
“Where the killing is committed without previous formed design and premeditation, but under the influence of a wicked and depraved mind, or with a cruel and wicked indifference to human life, the law implies malice and makes the offense murder in the second degree.
"If the jury has a reasonable doubt whether defendant took the life of the deceased purposely and with deliberate and premeditated malice:
*72 “And if from the manner in which defendant used the razor, the jury infers an intention to kill, and if you infer that he maliciously killed the deceased, but without deliberate and premeditated malice, your verdict should be one of guilty of murder in the second degree.
“If you should find, however, that defendant did not intentionally and maliciously kill the deceased, but that the act was committed in the heat of passion, you will then consider the law relative to the crime of manslaughter.
"Manslaughter.
“Manslaughter is the unlawful killing of another either upon a sudden quarrel, while in the heat of passion, or while in the commission of an unlawful act.
"’Malice is not an essential of manslaughter. That is malice as it is presented in first and second degree murder, is not a necessary element of manslaughter, although implied malice may sometimes be present in this degree of homicide.
"The express intent to kill, and express or implied malice accompanying the same, is the distinguishing characteristic between the two higher degrees of homicide and manslaughter.
"When a person kills in a sudden quarrel, the grade or degree of the crime may be reduced to manslaughter only when there has been some adequate provocation which produces passion, heat of blood, temporary excitement disturbing the control of reason, in which state of mind the accused kills another while under the influence thereof, and before the lapse of reasonable time for the blood to cool and reason to resume control of the mind of the slayer.
“If a person kills another under such circumstances, the law imputes it to the infirmity of human nature, and not to the malignity -and depravity of the mind. Taking life upon adequate provocation, is killing another in the sudden heat of passion when reason is dethroned by acts of the person killed which tend to inflame the passion and produce heat of blood.
“Provocation merely reduces the grade of crime, but does not altogether excuse it.
“Mere passion suddenly aroused without reasonable, legal cause, can not reduce a homicide to manslaughter. It must be aroused upon adequate cause, and the slayer must be a reasonable person under the circumstances.
“What constitutes adequate and sufficient provocation to reduce the ’grade of crime is not to be left to the uncontrolled power of the jury. It is the province and duty of the court to instruct the jury as to the rule of law concerning the adequacy of the provocation appropriate to the evidence adduced.
*73 “Mere refusal of a woman to receive the attention of a man, and anger, passion or heat of blood excited thereby, without other adequate cause, does not constitute adequate cause to reduce a killing under such circumstances to manslaughter.
“The jury will apply the rules of law to the evidence in this ease and determine the ultimate fact whether the killing was done with or without provocation and render your verdict according to the law given you by the court and evidence.
"The jury may only render a verdict of manslaughter when the evidence shows adequate provocation. If the evidence fails to show adequate provocation for the killing, a verdict for manslaughter may not be returned.
“While the indictment embraces a charge-of assault and assault and battery, a verdict for such offenses may be rendered only when the evidence fails to show that death does not result from such assault or assault and battery.
“The act of using a razor which produced death of the deceased not being disputed, or controverted by evidence, no forms of verdict for assault or assault and battery -are submitted to the jury.”
Manslaughter and Adequate Provocation.
It is to be remembered that the legal conception of manslaughter is the same under the present statute (G. 0., Section 12404) as prior to the codification of the criminal statutes; and that it is incumbent on the state to prove that the killing was done “either upon a sudden quarrel, or unintentionally while the slayer is in the commission of some unlawful act.” Johnson v. State, 66 O. S., 59.
The instruction or statement of the rule in the charge given, was, that when a person kills in a sudden quarrel the grade of crime may be reduced to manslaughter only when there has been some adequate provocation which produces passion, heat o-f blood, etc.; that mere passion suddenly aroused without reasonable, legal cause can not reduce the crime.
Being of the opinion that the evidence failed to disclose adequate legal provocation the court expressed the view that the determination of what constitutes adequate and sufficient provocation is not to be left to the unguided determination of the jury, it being the duty of the court to give some instruction concerning the same. The jury should not be left to decide that mere heat of blood constituted adequate provocation.
*74 The sole cause of passion aroused in the mind of the defendant was the refusal of the deceased to receive his attentions. This is strikingly made to appear from her last declaration, viz: “Oh! don’t do anything. I’ll talk to you!” In th,e charge the court properly eliminated this as not constituting provocation. Mere passion was also eliminated. It was stated that the passion must be aroused upon adequate cause, and that the slayer must be a reasonable person under the circumstances. The jury was then directed to apply the rules 'of law and determine whether the killing was done with or without provocation, and an appropriate verdict was submitted.
'This was more than defendant was entitled to; there was no quarrel; the deceased had said nothing or had not done anything that furnished reasonable or adequate provocation for the act of killing. The evidence showed on the contrary that defendant came to the house with a preconceived determination to take the life of the deceased.
The rule as stated in the instruction is thus stated in Williams v. State, 161 Ala., 52 (1909) :
“It is not within the uncontrolled power of the jury to say what should be taken as sufficient provocation. What would be sufficient provocation of such passion as would reduce the grade of the homicide is a question of technical, legal learning, which should be defined by the court and not left to the jury." See Michie Law Homicide, Section 271; 81 Am. Dec., 781; 161 Ala., 52; 71 Am. St., 553; 8 Am. St., 477.
It is held that provocation by words only can not reduce the killing to manslaughter. State v. Davis, 50 S. C., 405; 62 Am. St., 837.
As a general rule no provocation of words will reduce the crime to manslaughter. 71 Am. St., 567. If the provocation be not of the character which, in the mind of a just and reasonable man, would stir resentment to violence endangering life, the killing would be murder. 16 Am. St., 1, 19. See generally Michie on Homicide, 215; 95 Ala., 22; 27 Tex., 758; 55 Am. Rep., 756; 37 Am. St., 836; 8 Am. St., 477.
There is conflict of opinion among the decisions concerning the subject of provocation.
*75 In some decisions the view is taken that adequate provocation for such a state of mind as will reduce homicide committed under its influence to manslaughter, must be anything the nat-' ural tendency of which would produce such a state of mind in ordinary men, as will cause passion and dethrone reason, and which the jury are satisfied did produce it. in the case before them. State v. Grugin, 147 Mo., 39; 71 Am. St., 553.
There is a tendency among some authorities to leave it to the jury to decide what is a reasonable or adequate provocation for such a state of mind as should give to a homicide committed under its influence the character of manslaughter as a question of fact for the jury to decide according to the facts and circumstances regardless of the law as laid down by the court. Maher v. People, 10 Mich., 212; 81 Am. Dec., 781; Biggs v. State, 29 Ga., 723; 76 Am. Dec., 630.
Many decisions are found in the books where mere. words - are regarded as insufficient. State v. Dans, 50 S. C., 405; 62 Am. St., 837.
The rule in Ohio seems to have been more restricted as favoring the idea that it is the function of the court to define the adequacy of the cause in restricted form, and not to leave it to the uncontrolled judgment and discretion of the jury. See also Michie Hom., p. 202; 74 Ga., 825.
In State v. Elliott (Pugh, J.), it was held that:
“A legal provocation in manslaughter law means personal violence or personal violence accompanied by words.
“The object of the rule of provocation is to guard human life from brutal rage, and at the same time palliate human frailty. Nothing would be gained by substituting for this rule the fluctuating rule, which is often contended for in desperate criminal cases, by which each man shall be judged according to the excitement natural to his peculiar temperament when aroused by real or fancied insult given by words alone.” State v. Elliott, 11 Ohio Dec. (Reprint), 116; 26 W. L. B., 116; affirmed by Sup. Ct. without report cases cited 6 Blackf., 299; 8 Ire., 344; 96 N. C., 20; 8 Cal., 435; 38 Mo., 270.
The doctrines of legal provocation have been stated to demonstrate that no mistake was made against the defendant in this case. He was given a chance for a verdict in manslaughter, *76 by the instruction given and by submission of a form of verdict, when as matter of fact and law, he was not entitled to such verdict under the law and the evidence.
State v. Elliott, supra, was affirmed without report by the Supreme Court, thus giving trial courts some warrant for eliminating certain acts clearly insufficient to constitute adequate provocation from consideration by the jury.
The difficulty encountered by trial courts in giving instructions to the jury in first degree homicide may thus be stated:
When the ease presented clearly tends to show either second or first degree murder, it is difficult to frame an instruction concerning manslaughter that adequately applies to the evidence. A general definition of manslaughter 'including the essential elements of provocation may tend to confuse rather than to assist the jury. When there is no evidence of provocation we ought to have the liberty of -being clear and specific about it. •
It is difficult to give a concrete instruction as to provocation and adequate cause so as to aid the jury. If the doctrine of State v. Elliott, supra, that personal violence accompanied by words is to be regarded as the standard then we may have few first degree cases in which an instruction in manslaughter may be given.
Where there is personal violence, or apparent purpose or threat to do violence, we encounter difficulty in differentiating between self-defense and provocation. 'This is shown by the writer in State v. Wells, in a charge given to the jury:
“What constitutes adequate and sufficient provocation to reduce the grade of crime is not to be left to the uncontrolled power of the jury to say — as being mere mental excitement, heat of blood and dethroned reason without regard to cause. * * * Mere words or threats to injure another, by. a woman to a man, without some act or action, unaccompanied by some demonstration from which the slayer may have reasonably inferred an intention on the part of the deceased to execute the same, with apparent ability to do so, will not constitute adequate provocation. If there is no apparent or imminent danger of threats being executed, there can be no justification for heat of blood or passion in the mind of a reasonable person.
“If there be no acts evincing an intention to resort to the immediate use of force, and no apparent ability to execute *77 them, there can. be no justification or excuse in law or fact for taking life while in a sudden heat of passion under such circumstances.
“In case of threats made by a woman on sudden quarrel between a woman and man, the jury may take into account, the disparity of strength and ability to execute the threat on the one hand and to resist it on the other hand.
“If an accused permits his passions to be inflamed by something not constituting legal provocation, the killing can not then be manslaughter, but must be murder.
“If the jury should conclude that the deceased informed defendant that she had the disease of syphilis and that this gave rise to a sudden quarrel and heat of passion, such fact alone, without other overt acts and threats indicating apparent intent to execute the same, would not constitute adequate cause to reduce the killing to manslaughter,” etc.
The foregoing is an illustration of what is believed to be the appropriate function of the court in the matter of instruction concerning the adequacy of provocation.
Unless it be conceded that a trial court has some such function or duty to perform, the result will often be that instructions- on the subject of manslaughter will be wholly inapplicable to the case, and afford license to the jury to disregard law and evidence.
Indeed it is to be hoped that some trial judge will some day be sufficiently courageous to decline to give instructions concerning manslaughter when the evidence clearly does not warrant it. -
In Colorado it is said:
“It is well settled that in a prosecution for murder where there is no evidence from which á jury would be justified in finding the defendant guilty of manslaughter, a trial judge is not required to instruct upon that grade of homicide.” Demato v. People, 49 Colo., 147; 111 Pac., 703; Ann. Cas. 1912 A, 783; Mow v. People, 31 Colo., 351; Crawford v. People, 12 Colo., 290; Carpenter v. People, 31 Colo., 284.
Provocation sufficient to reduce to manslaughter must not only be reasonable but co-existent with the absence of malice. How then can there be justification for a charge of manslaughter in such a case as this where a deadly weapon was used so as to justify the conclusion that it was purposely and maliciously designed to cause death, malice being presumed.
*78 The provocation must be such as to eliminate malice implied or actual. In this case the proof disclosed both.
Passion alone is not provocation. It must be passion justly excited by legal provocation. There must be a concurrence of passion, anger, sudden resentment or terror, and adequate cause to produce such passion. Hatchell v. State, 47 Tex. Cr., 380; 84 S. W., 234 (an instructive case).
In State v. Mewhinney, 43 Utah, 135; 134 Pac., 632; Ann. Cas. 1916 C., 537, the court observed:
“Where there was some evidence * * * from which the jury could have found a deliberate and premeditated murder, yet the jury would not have been justified in finding that the murder in question was not committed in an attempt to perpetrate a robbery, and upon the latter question there is not even room for doubt or conflict. Under our statute a murder so committed constitutes murder in the first degree and legally can constitute nothing else.

“True, a jury in any homicide case has the power to disregard the evidence and may find one who is clearly guilty of first degree murder guilty of manslaughter or acquit him.

“From this it is assumed that, because a jury may do this, therefore, a court must submit all the degrees of murder, and thus give the jury the right to pass upon the several degrees of murder. * * * While it is true that under our jurisprudence a jury has the power, with or without reason, either to reduce the degree of the crime, if it be divided into degrees, or to acquit the accused, it does not follow that a court is bound in effect to charge that they may disregard the law, the evidence, and their oath in arriving at a verdict.”
Speaking of the failure to submit the second degree murder where the killing was perpetrated in an attempt to rob, the court stated:
“Neither is it correct to say that by not (doing so) * * * the court thereby in effect coerces the jury to find the accused guilty of murder in the higher degree. Whether such might be the effect under our statute depends upon the evidence. * * *
“It is the law that fixes the degree of the offense, and when the facts are not in dispute and clearly show that the murder in question was committed as aforesaid, the jury have neither the legal nor a moral right to refuse to follow the law and in refusing to do so in effect amend or repeal the statute.
“Of course, if the jury refuses to be bound by either law or fact, a court is powerless.”
*79 On the question whether the trial court erred in refusing to charge with regard to murder in the second degree, under all the facts and circumstances the court stated:
“Upon this question we are of the opinion that there was absolutely no evidence either direct or inferential which would have justified a finding by the jury other than that the murder * * * was committed in an attempt to perpetrate a robbery. If this be correct, why submit a question to the jury upon which an affirmative finding can in no event be justified? Is not the question of whether there is any evidence in support of any essential fact as much a question of law in a homicide case as any other?

“Must the'court in advance abdicate its prerogative to the jury simply because that jury has the power, and perhaps the inclination, to disregard both law and fad?”