## HOLLY VANN v. THE STATE.

### No. 3222.   Decided March 8, 1905.

**1.—Murder in the First Degree—Continuance—Immaterial Evidence—Fugitive From Justice.**

Where the testimony of the absent witness, in the light of the record, was not material, to wit: the fact that defendant may have borrowed a pistol from the absent witness and returned it immediately undischarged, the application was correctly refused; as that would in no sense prove that he did not get a pistol and assist in the murder of deceased. Besides the absent witness being a fugitive from justice, he could not probably be had by a continuance or postponement of the case, even if his testimony had been material.

**2.—Same—Argument of Counsel—Legitimate Inference.**

Where the evidence showed that either the defendant or his companion had a large pistol with which the homicide was committed, it was a legitimate inference of State's counsel that a pistol of that character would make a large wound and what kind of a wound a 45-caliber pistol would make.

**3.—Same—Reflections Upon Defendant And His Counsel.**

A remark of State's counsel referring to appellant as cattle, while improper, is not cause for reversal; neither is a bare reflection upon his counsel in response to argument of such counsel to the effect that he sympathized with his client, to which State's counsel replied that it was a deterioration in the moral nature to do so, but disclaimed any personal reflection when defendant's counsel objected.

**4.—Same—Colloquy Between Counsel—Special Charge.**

Where the record did not contain any special charge requesting the court to instruct the jury to disregard remarks of the county attorney in a colloquy with appellant's counsel to the effect that defendant selected three or four jurors with the hope that he could influence them with a grand stand play, there is no ground for reversal, although such language was entirely improper.

**5.—Same—Evidence Warranting Strong Language of Counsel.**

Where the State's counsel said to the jury: "If you have any sympathy don't waste it on a red-handed murderer like this (pointing toward defendant) but go to this woman (pointing to the widow of deceased), sympathize with her; throw the strong arms of the law around her and say we have no sympathy for this man (pointing to defendant)," there was no objection to such argument where the evidence warranted the language, and to insist upon the death penalty against defendant and to throw the strong arms of the law around the wife.

**6.—Same—Murder in First Degree—Death Penalty.**

Where the evidence showed that defendant in conjunction with another engaged in a direct attempt to rob deceased at the perpetration of the homicide, it was murder in the first degree; and where the whole record is convincing of his guilt, the jury were amply warranted in inflicting the death penalty.

Appeal from the District Court of Dallas. Tried below before Hon. E. B. Muse.

Appeal from a conviction of murder in the first degree; penalty, death.

A full statement of the main facts in this case will be found in the companion case of Burrell Oats v. State, reported in this volume.

*A. E. Firmin* and *Latham & Hyde,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, his punishment being assessed at death.

The evidence for the State, through the testimony of the wife of deceased, shows substantially: that appellant and Burrell Oats (a negro) came into Sol Aronoff's store, in the city of Dallas about 9 o'clock on the night of November 29th. Deceased, wife and children lived in the back part of the store. The appellant called for a sack of tobacco, Bull Durham. Deceased went to the counter and handed the sack of tobacco, and as soon as he walked out from the counter and walked up to the little bar, and while he was standing there, they drew two guns on him. "He says, 'Have I done anything?' They say, 'Hold up!' He says, 'I am right in my store.' They say, 'Well hold up.' And he says, 'I will tell you I have not any money in my pockets. I have got nothing with me; all my money is in the drawer and it is easy opened, and if you want anything in the store just take it; anything you want. The drawer is easy opened. It ain't fastened.' They never answered him but tried to shoot him. I had been sitting in a chair in the room by the screen door with my face to him, and as soon as I saw that I ran back to my bedroom to get a gun, and when I went out that negro held him by the right hand, wouldn't give him a chance for any protection. I took my gun and shot at the negro, I thought sure I could hit him, but I was too much excited. And when I shot at the negro, the white fellow shot my husband. That is the man that killed my husband sitting right there. Defendant there is the one who

killed my husband. My husband didn't live ten minutes. He took the gun from my hand with his left hand, but the gun dropped on the floor right by his side, and he ran to me, and says, 'Fannie, I am dying.'"

Deceased expired a short time thereafter. The cash drawer was taken out of the counter and left on the floor, and all the money was taken out of it—some $15 or $20.

Appellant testified that he went there for an innocent purpose; to buy tobacco, and did not participate in the robbery at all, but was an unwilling looker-on at the tragedy. This is the substance of the testimony for the State and the defense, without attempting to give a literal satement of it.

Bill of exceptions number 1 shows that appellant's counsel furnished the sheriff with a list of his witnesses, for the purpose of having the same called and of ascertaining whether or not they were present and accessible. All of said witnesses answered, save and except Harry Howard, alias Harry Edwards. Thereupon appellant's counsel announced not ready for trial, on account of the absence of said witness; and presented his first application for continuance on that account. Said witness had been subpœnaed, and placed under cognizance as shown by the records of the court. The bill shows that appellant expected to prove by said witness "that the 38-caliber pearl-handle plated pistol referred to by other witnesses was in fact the property of Harry Howard, and was by the defendant Holly Vann returned to him before 8 o'clock on the evening of the shooting of deceased, Sol Aronoff, and was not again in the possession of defendant from that time until the present." That his absence was not at the request nor the connivance or permission or consent of the defendant. He also expected to prove by witness, Harry Howard, at the time of the return of said pistol to him, the pistol had never been discharged. Whereupon, acting through assurances of counsel for State, that said Edwards was in one of two towns, and that he could be reached by phone, and that said witness would, upon request of State's counsel, be present the following morning, the court overruled appellant's motion; that after the State had rested its case, appellant again moved the court for continuance on account of the absence of said witness, which motion was overruled. After the introduction of his witnesses, appellant called for said absent witness, and again renewed his motion for a postponement or continuance. Appended to this bill is the following: "The court approves this bill as substantially correct. There was no issue raised by the State or defendant in the trial of this cause where Harry Edwards became necessary as a witness. The State introduced no evidence requiring him as a witness. The attention and scrutiny of the higher court to an inspection of the record on this question is requested. Harry Edwards, the witness named, was at that time and is now a fugitive from the law, which fact was known to the court then and now." It will be seen from an inspection of the foregoing that apellant ex-

pected to prove by said witness that the 38-caliber pearl-handled pistol referred to by other witnesses was in fact the property of Harry Howard, and was by the defendant returned to him about 8 o'clock on the evening of the shooting of deceased, and was not again in possession of appellant; and that said pistol was not discharged when returned. There was no testimony, as stated in the explanation of the court, about any pearl-handled pistol. Nor can we see in what way said testimony could be material in behalf of appellant. The fact that he may have borrowed a pistol from the absent witness and returned it immediately undischarged, would in no sense prove that he did not get a pistol and assist in the murder of deceased. Accordingly, we hold that the court did not err in refusing the continuance. The witness being a fugitive from justice would not probably be had by a continuance or postponement of the case, even if his testimony had been material.

Appellant's second bill complains of the argument of the county attorney in his closing speech to the jury, making certain remarks describing what kind of a wound a 45-caliber would make, to which defendant objected for the reason there was no evidence upon that subject; and it was used for the purpose of arousing the passions of the jury. The testimony shows that one of the parties had a large pistol, and certainly it was a legitimate inference, from said fact, that a pistol of that character would make a large wound, and it would not be improper for State's counsel to comment upon it.

The third bill shows the following: Counsel for defendant in his argument before the jury made this statement that "he sympathized with men in the position of this defendant." In answer to this statement, the county attorney, in his closing argument said, "When I find a man sympathizing with cattle like that—pointing toward the defendant—it shows a deterioration in the moral nature." To which counsel for defendant objected, and said it was a reflection on him, and because the phrase "cattle like that" was not proper in reference to defendant, and improper argument. Appended to this bill is the following qualification: "When Mr. Firmin objected the court stopped Mr. Sumners. Mr. Firmin said he took that as a personal reflection on himself. Mr. Sumners assured Mr. Firmin that he did not intend any personal reflection, but he insisted that it was evidence of moral deterioration. Both seemed satisfied and Mr. Sumners proceeded." We know of no law authorizing this court to enter the ordinary amenities of life and reverse a case because of real or supposed violation thereof. If the remark was a reflection upon appellant's counsel, it was a bare inferential reflection, and certainly State's counsel has a right to his views as to sympathy expressed for appellant. A remark referring to appellant as cattle, while not proper, is not a matter authorizing a reversal of the case. Argument of counsel, however, should be confined to the facts adduced.

By the fourth bill of exceptions it is made to appear that the county attorney in his closing argument said to the jury: "That defendant

selected three or four jurors with the hope that said defendant could influence them with a grand-stand play." Defendant objected. Whereupon court asked counsel for defendant if he desired to deny this; and counsel answered, "We most emphatically deny it." Over which objection, the court immediately permitted the county attorney to make this statement: "Counsel for defendant denies it; but I know the tricks of the trade." The bill is approved with this qualification: "This was one of those matters that come from zeal of counsel, and was a colloquy between Mr. Sumners and Mr. Firmin. Sumners made the remark attributed to him in this bill. Mr. Firmin objected, and Sumners asked him if he denied it, which Mr. Firmin said he did. It was over like a flash, before the court could take action, if any was necessary. The court has no recollection of having put it, and there is no record of it known to the court."

The record does not contain any special charge requesting the court to instruct the jury to disregard the remarks of the county attorney and the statement of appellant's counsel shows that he denied the imputation. While the language of the county attorney was entirely improper, in the absence of a special charge, and in the light of this record, we do not think it authorizes a reversal.

The fifth bill of exceptions complains of the following argument of the county attorney: "If you have any sympathy, don't waste it on a red-handed murderer like this (pointing toward the defendant) but go to this woman (pointing to Mrs. Aronoff, widow of Sol. Aronoff, deceased) sympathize with her; throw the strong arms of the law around her and say we have no sympathy for this man" (pointing toward defendant). We see no objection to this statement of the county attorney. From the State's evidence he was a red-handed murderer. He shot down and killed a defenseless man, when there was no cause to do so in order to get his money. It seems to have been a reckless disregard of all human rights on the part of appellant. If the testimony of the State be true, he was a murderer. This being a legitimate deduction from the testimony, we think it was permissible for the attorney representing the State to insist upon the death penalty against him. It was also permissible for the State's counsel to urge the jurors not to permit their sympathy for him to warp their judgment, but to throw the strong arm of the law around the wife.

We note that the court gave all of appellant's special charges. We have carefully read the charge of the court, and find no error therein. The evidence shows that appellant, in conjunction with the negro, Burrell Oats, engaged in a direct attempt to rob deceased at the time of the perpetration of this crime, and in his eagerness to do so shot and killed deceased. This is murder in the first degree under our Penal Code. His defense is neither supported by reason nor is it in consonance with the facts detailed by himself; but the whole record is convincing and shows that he is guilty of murder in the first degree, and the jury

were amply warranted in inflicting the death penalty. The judgment is affirmed.

*Affirmed.*

Henderson, Judge, absent.

[Motion for rehearing overruled without written opinion.—Reporter.]