## M. L. MOONEY v. THE STATE.

No. 3416.    Decided March 3, 1915.

Rehearing denied May 12, 1915.

**1.—Receiving and Concealing Stolen Property—Indictment.**

Where the indictment charged that the theft of the cattle occurred in the county of the prosecution and the receiving and concealing thereof in another county, and otherwise followed approved precedent, the same was sufficient.

**2.—Same—Venue—Jurisdiction.**

Where the theft of the alleged cattle was committed in the county of the prosecution and defendant lived and received and concealed the same in another county, the county of the prosecution had jurisdiction and venue of the case.

**3.—Same—Change of Venue—Discretion of Court.**

Where defendant's motion to change the venue under both grounds of the statute was directly controverted by the State, and the trial judge, after hearing the evidence, under his discretion overruled the motion for change of venue, there was no reversible error, although the evidence was conflicting.

**4.—Same—Rule Stated.**

The question of change of venue is left largely to the discretion and sound judgment of the trial judge, and in no case should the judgment of conviction be set aside on account of the action of the trial court in refusing a change of venue unless it is clear that such court has abused his discretion. Following Tubb v. State, 55 Texas Crim. Rep., 606, and other cases.

**5.—Same—Evidence—Ownership—Identification.**

Upon trial of receiving and concealing stolen cattle, where the witnesses fully identified same by the flesh-marks, there was no error in permitting them to state that the cattle belonged to them.

**6.—Same—Evidence—Person Unknown—Indictment.**

Where the indictment alleged that the defendant received said cattle from a person to the grand jurors unknown, there was no error in admitting testimony of the district attorney and grand jurors in support of this allegation.

**7.—Same—Brand—Ownership—Identity—Knowledge of Defendant.**

Upon trial of receiving and concealing stolen cattle, there was no error in admitting testimony as to the changing of the brands on said cattle at the time defendant received the same to show guilty knowledge of defendant, and the proof of unrecorded brands was admissible to prove both ownership and identity under the Act of March 31, 1913. Following Turner v. State, 71 Texas Crim. Rep., 477.

**8.—Same—Evidence—Defendant as a Witness—Civil Cause.**

Upon trial of receiving and concealing stolen cattle, there was no error in admitting testimony as to what defendant testified to in the Federal Court in a civil cause, wherein the alleged owners of said cattle were plaintiffs and the defendant the defendant therein; with reference to the ownership and possession of said cattle.

**9.—Same—Evidence—Insanity—Rebuttal.**

Where, upon trial of receiving and concealing stolen cattle, the defense had introduced some testimony tending to raise the issue of defendant's sanity, there was no error to admit testimony in rebuttal as to defendant's mental condition at the time it was claimed he bought said stolen cattle, and at the time he testified in the civil action brought against him by the prosecuting witnesses.

**10.—Same—Charge of Court—Requested Charges.**

Where, upon trial of receiving and concealing stolen cattle, the court's charge, in connection with the requested charges by defendant submitted by the court, correctly applied the law under the facts of the case, there was no reversible error.

**11.—Same—Evidence—Surprise.**

Where, upon trial of receiving and concealing stolen cattle, the same testimony of one of the alleged owners had been given on the former trial of the case, defendant's counsel could not claim surprise on account thereof.

**12.—Same—Insanity—Charge of Court.**

Where, upon trial of receiving and concealing stolen cattle, the defendant pleaded insanity, which issue was submitted in a proper charge of the court as drawn by defendant's attorney, and the jury found the same untrue, there was no reversible error.

**13.—Same—Argument of Counsel—Bystander's Bill—Requested Charge.**

Where the bill of exceptions to the argument of State's counsel was qualified by the court to the extent that no request was ever made on behalf of the defendant that the court instruct the jury not to consider the remarks of State's counsel, the same must be accepted by this court, in the absence of a bystander's bill, and the naked statement of the attorneys on this question can not be considered; besides, the request was not in writing as to the court's charge.

**14.—Same—Argument of Counsel—Case Stated.**

Where State's counsel, in his opening argument, upon trial of receiving and concealing stolen property, stated that the story of the thievery of which defendant is the head rivaled the stories of Robin Hood of ancient days; that he was the captain of cow thieves, and was at the head of an underground system, leading from the pasture of the prosecuting witnesses down to another county terminating in defendant's pasture where the cattle were found, and that this system of cattle stealing must be broken up, the same was not reversible error, where defendant's sole plea was insanity and said remarks of State's counsel could in no event have affected the jury, and was a legitimate comment on the facts in evidence. Following Bass v. State, 16 Texas Crim. App., 62, and other cases.

**15.—Same—Rule Stated—Argument of Counsel.**

To reverse in all cases in which counsel did not confine themselves to the record would render trials farces, and unless such argument was clearly calculated to prejudice the rights of the defendant, the same is not reversible error. Following House v. State, 19 Texas Crim. App., 227, and other cases.

**16.—Same—Rule Stated—Argument of Counsel.**

When an objectionable statement is made in argument not authorized by the evidence nor a deduction therefrom, the mere objection thereto, in the absence of a requested charge to withdraw the same, does not present reversible error. Following Hatchell v. State, 47 Texas Crim. Rep., 380, and other cases.

**17.—Same—Rule Stated—Argument of Counsel.**

Unless the remarks of counsel are obviously of a nature to impair the rights of the defendant or prejudice his case before the jury, such remarks, though improper, will not be considered reversible error, unless a charge was asked and refused, and exception reserved thereto. Following Kennedy v. State, 19 Texas Crim. App., 618, and other cases.

**18.—Same—Rule Stated—Requested Charges—Argument of Counsel.**

It is true that this court has reversed some cases, even where the requested charges were given, but these are exceptions, and not the rule, and each case must rest upon its own facts.

**19.—Same—Argument of Counsel—Case Stated.**

Even conceding that the language of State's counsel was improper, still under the circumstances of this case, the same are not reversible error, as they were not of such material nature as to impair the rights of the defendant or of such grave character as to render them obviously injurious to him.

**20.—Same—Objections to Charge of Court.**

Where this court inadvertently overlooked the fact in the record that defendant had objected properly to the charge of the court, in the original opinion, but, nevertheless, fully considered such objections in defendant's appeal, there was no reversible error.

Appeal from the District Court of Wheeler. Tried below before the Hon. F. P. Greever.

Appeal from a conviction of receiving and concealing stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Geo. H. Culp* and *C. C. Small* and *R. H. Templeton* and *Ramsey, Black & Ramsey,* for appellant.—On question of argument of State's counsel: Grimes v. State, 64 Texas Crim. Rep., 64, 141 S. W. Rep., 261; Davis v. State, 54 Texas Crim. Rep., 236; Smith v. State, 55 id., 563; McKinley v. State, 52 id., 182; Smith v. State, 44 id., 137; Powell v. State, 44 id., 273; Frederickson v. State, 44 id., 288; Taylor v. State, 50 id., 560; Robbins v. State, 47 id., 312; Murmutt v. State, 67 S. W. Rep., 508; Coleman v. State, 90 S. W. Rep., 499.

On question that it is error for counsel in argument to state facts not in evidence: Tillery v. State, 24 Texas Crim. App., 251; Ormon v. State, 24 id., 495; Clark v. State, 23 id., 260; Crawford v. State, 15 id., 501; Parks v. State, 35 Texas Crim. Rep., 378; Turner v. State, 39 id., 322; Pollard v. State, 33 id., 197.

On question of insufficiency of evidence in connection of argument of State's counsel: Roberts v. State, 67 Texas Crim. Rep., 580, 150 S. W. Rep., 627; Railway Co. v. Lowe, 86 S. W. Rep., 1059; Dillingham v. Scales, 78 Texas, 205.

On question of fair and impartial trial: Faulkner v. State, 43 Texas Crim. Rep., 311.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of change of venue and discretion of court in overruling same: McCarty v. State, 4 Texas Crim. App., 461; Cravy v. State, 23 Texas Crim. App., 677; Alarcon v. State, 47 Texas Crim. Rep., 415; Renfro v. State, 42 id., 393; Blain v. State, 34 id., 448; Bowmer v. State, 55 id., 416; Davis v. State, 19 Texas Crim. App., 201; Pierson v. State, 21 id., 14.

On question of introducing testimony on change of brand: Murio v. State, 31 Texas Crim. Rep., 210.

On question of argument of counsel: House v. State, 9 Texas Crim. App., 53, and cases cited in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for receiving and concealing stolen cattle, knowing they were stolen, and his punishment fixed at the lowest authorized by law.

He was formerly convicted of the same offense and his punishment fixed at the highest authorized by law, but under a different indictment. The former conviction was reversed because the indictment therein averred the theft, and receiving and concealing, both occurred in Wheeler County, when the charge of the court authorized his conviction if the theft occurred in Wheeler but the receiving, etc., occurred in Collingsworth County. (73 Texas Crim. Rep., 121, 164 S. W. Rep., 828.) Whereupon this indictment was found, which avers the theft occurred in Wheeler, and the receiving and concealing in Collingsworth County. The indictment follows the statute and the approved forms and is sufficient. The court properly overruled appellant's motion to quash it. Mooney v. State, supra; secs. 1524-1525 White's Ann. P. C.; Wil. Cr. Forms (4th ed.), p. 350; Branch's Crim. Law, sec. 818.

The statute (C. C. P., art. 248) expressly enacts this offense may be prosecuted in the county where the theft occurred, and all the decisions are in accordance therewith. There can be no question but that Wheeler County had jurisdiction and venue of this case,—the theft was committed therein,—even though appellant lived, and received and concealed, the cattle in Collingsworth County. The court correctly overruled his motion in arrest of judgment.

Appellant made a motion to change the venue on both statutory grounds (C. C. P., art. 628), which was directly controverted by the State. (C. C. P., art. 633.) Thereupon the judge heard all the evidence thereon, which was properly preserved in a bill. We have carefully read all this evidence. We think it unnecessary to state it. The true rule is stated by this court in Tubb v. State, 55 Texas Crim. Rep., 606, p. 617, as follows:

"Of necessity in respect to a question of this kind much ought to be left to the discretion and sound judgment of the court trying the case, and in no case should the judgment of conviction be set aside on

account of the action of the trial court in refusing a change of venue · unless it is clear that such court has abused his discretion. This is the doctrine laid down in almost the precise terms above stated by Judge Hurt in the case of Gaines v. State, 37 S. W. Rep., 331. See also Cox v. State, 8 Texas Crim. App., 254; Bohannon v. State, 14 Texas Crim. App., 271; Martin v. State, 21 Texas Crim. App., 1; Connell v. State, 46 Texas. Crim. Rep., 259, 75 S. W. Rep., 512; Reeves v. State, 83 S. W. Rep., 803; Earles v. State, 85 S. W. Rep., 1; Adams v. State, 93 S. W. Rep., 116." And as was said in that case, so we say in this: "After a careful inspection of the record, we do not believe that we could or would be justified, in view of the action of the trial court in conflicting evidence, in reversing the judgment on the failure of the court to grant a change of venue."

There was no error in permitting the witnesses Champ and E. L. Davis each to testify the alleged stolen cattle belonged to them. This was held in the other appeal of this case. Both witnesses fully identified some of these cattle by flesh marks.

The indictment alleged appellant received said cattle "from a person to the grand jurors unknown." It was proper, if not necessary, that this should be proven. The testimony of the district attorney and grand jurors showing this allegation was true, and the efforts made by the grand jury to ascertain the identity of this unknown party was admissible. Sec. 1508, sub. 2, White's Ann. P. C., and cases there cited.

All evidence of the various witnesses objected to by appellant's several bills, as to the brands on said cattle originally, and that these brands had been burned subsequently, was admissible. It all tended to show the identity of the cattle as those belonging to the alleged owners, and to show their condition both before and at the time appellant received them so as to affect him or tend to do so with knowledge that they were stolen. By the Act of March 31, 1913, page 129, article 7160 of our Revised Statutes was so changed as that brands on cattle now, whether recorded or not, are admissible to prove both ownership and identity. Turner v. State, 71 Texas Crim. Rep., 477, 160 S. W. Rep., 357.

The court did not err in admitting the evidence of Mr. Davis as to what appellant swore at Amarillo in the Federal court on a trial therein between the Davis brothers and appellant over the possession and ownership of said cattle, nor in overruling his motion to exclude this evidence. This was held admissible on said former appeal. (73 Texas Crim. Rep., 121, 164 S. W. Rep., 829.) We will somewhat more fully state and discuss this evidence later herein. Appellant's bill 13 to a question to and answer thereto of the witness Champ Davis is too meager and insufficient to require review. But if it could be considered, in the light of the record, it would show no reversible error. No error is shown by his bills 13 and 18 to questions and answers of the witness Worley, as to appellant's condition at the time it was claimed he bought said stolen cattle and at the time he testified at Amarillo about them. Appellant had introduced some testimony tend-

ing to raise the issue of his sanity at both these times, and the testimony of Worley was in rebuttal on that issue.

There is a document in the record which is signed by appellant's attorneys as objections to the court's charge and in some instances stating he asked certain designated charges to supply the omission and make corrections of the court's charge. Some of these objections are very general—too general to point out any specific defect, if there had been any, in the court's charge. This document does not show to have ever been presented to or acted upon by the judge, for the judge makes no noting thereon that it was ever presented to or acted upon by him. Nor does the record show any bill of exceptions by appellant to the court's refusal or failure to consider or comply with any of his said objections. There are also in the record some ten special charges apparently requested by him. The judge gave three of them and refused the others. When those refused were presented to the judge is in no way made to appear, further than they were filed on the same day the verdict was rendered. Appellant took no bill whatever to the court's refusal to give either of those he refused to give. Hence, whatever complaints appellant has in reference to these matters are in no condition to be reviewed, as uniformly held by both the civil courts of appeal and this court. (Ross v. State, 75 Texas Crim. Rep., 59, 170 S. W. Rep., 305, and cases cited.) However, we have gone over all these objections and special charges. The action of the court, even if we could properly review these matters, was correct. The court's charge in connection with those special charges of appellant's given, correctly submitted every issue in the case necessary or proper to be submitted.

In order to properly discuss and decide appellant's only other contentions—remarks of the prosecuting attorney to the jury in argument, after all evidence was in and the charge had been read to them—it will be necessary to succinctly state the material facts established by the evidence. We have carefully read, more than once, and studied the statement of facts. It is remarkable and unusual in that most all the material criminating facts are testified to by several witnesses, who are in no way disputed or impeached, and where any material criminating fact is testified to by one witness alone, he is in no way disputed or impeached, and the other undisputed proof practically demonstrates the truth of his testimony. We will, therefore, not recall the evidence of each witness, though occasionally we may state what some particular witness testified.

E. T. and Champ Davis, brothers and equal partners, were cattlemen in 1912-1913, and had been for many years. They owned one large, fenced ranch somewhat in the southeast corner of Wheeler County, on which Champ Davis lived, and on which in the fall of 1912 and winter of 1912-1913 they had and kept a large number of cattle—more than 2000 head. They also had some smaller fenced ranches in Oklahoma, on one of which E. T. Davis lived. On some of these latter, during the same time, they had and kept some cattle, but nothing like the number as on their said large ranch. In the winter they fed their

cattle. In about November, 1912, or before then, they placed the twelve head of cattle described in the indictment herein, with others, on their Wheeler County ranch and undertook to keep them there. Some time between the time they placed them on said ranch, and about March 1, 1913, sixty head, including said twelve, were stolen therefrom. No one could tell, with certainty, whether the sixty head were all stolen at one time by one person, or different numbers at different times by another person or persons. There is evidence which would have authorized the jury to believe they were all stolen at one time, while other evidence would indicate they were stolen at different times.

As soon as the owners missed the sixty head from their ranch, about March 1, 1913, they began a search for them, but failed to find any of them anywhere about their ranches, and have never found but the said twelve head.

Said Davis Brothers' brand was the figure 2 on the right shoulder and two stripes on the right leg. All these stolen cattle, and especially said twelve head, were thus branded before they were stolen.

Appellant was also at said time a cattleman, and had been for many years. He then lived on a section of land he owned near the center of Collingsworth County, and had several small pastures or ranches in said county; and also one in Oklahoma. Where he lived was about thirty miles from Davis Brothers' Wheeler County ranch. There were many fences of others between them, and no direct road from one to the other place. In February or March, 1913, appellant leased from Mr. McClaskey a pasture, telling him at the time he wanted to put about forty-five head therein. About May 5, 1913, as soon as McClaskey could get this pasture ready, appellant did put forty-five head of cattle therein, including the said twelve head described in the indictment. This McClaskey pasture was quite secluded, rough, and had deep canyons in it. It was fully a mile from any public road. Grass therein seems to have been in the canyons. McClaskey, appellant's witness, said the grass would spring up in the spring earlier in the canyons than on top, and the cattle would most likely be in the canyons then. He also said there were some private roads running through his place used by fishermen and hunters and by persons from a certain neighborhood when the river was up, and, "cattle right down in the canyons cannot be seen from any point on the road that goes through there." The only running water for cattle in that pasture was in the canyons. He also said when appellant put these cattle in his pasture he also sent another bunch down to a ranch at Texola.

In hunting for their sixty head of stolen cattle E. T. Davis, in the spring and summer of 1913, went into appellant's pasture, but found none of them then therein. He, however, in the summer of 1913, did find said twelve head in said McClaskey pasture. He and many other witnesses clearly showed that said Davis Brothers' said brands were on said cattle, but had been burned over and the figure 2 had been changed to what the witnesses call a balloon bar, or O bar. That this was done

by attempting to burn over the whole figure 2 so as to make the upper part an O and the lower part a bar thereunder. And the two stripes on the right leg had been burned over so as to make what the witnesses call a lazy H. On one or two of the cows the 2 had been burned over and made the figure 8. These facts were thoroughly established by many witnesses, and in no way disputed. Besides, Davis Brothers, by themselves and at least two other witnesses clearly identified from three to five head of these cattle as theirs by flesh marks, and as that many of their sixty head of stolen cattle. Davis then went to appellant, told him of finding and identifying said twelve head and about how the brands had been burned. Appellant, Mooney, then told Davis he had bought said cattle from a man by the name of Jackson—that he had bought sixty head from Jackson. Davis told him he wanted the cattle and the man who burned them, and asked him if he could get hold of Jackson. Mooney "said he could, he said he lived right off down there, and pointed east in the direction of Oklahoma." He asked Mooney where the balance of the sixty head were; "he said the remainder of them were up on Sweetwater in Oklahoma." Mooney then had a ranch on Sweetwater in Oklahoma. At this time, when Davis told Mooney the brands of the cattle had been burned, Mooney said "they looked like burned cattle to him." Mooney never produced said man Jackson—if there was such man—at any time, and the record in no way shows he ever attempted or tried to do so. Soon after this Davis went to Mooney's Sweetwater ranch and searched for the remainder of the sixty head, but Mooney had preceded him there, and Davis then found none of them there. Mooney afterwards claimed to Davis he had bought only thirty head from Jackson. He also later told him that Jackson lived in Childress County, which was in a different direction from where he at first told and pointed out to Davis where he lived.

Mooney refused to deliver said twelve head to Davis. Thereupon, said Davis Brothers sued him in the Federal court at Amarillo for, and sequestrated, them. In the trial of that civil case Mooney took the stand and testified for himself. Davis testified herein that on that civil trial, on cross-examination, Mooney swore "he knew that they were our cattle and he put them down in the McClaskey pasture for the purpose of keeping them out of the way for fear we would claim them. He said they looked like the brands were burned to him. He said he cut those particular cattle out to put them in this particular pasture,—McClaskey pasture." Mooney nor his attorneys could have been surprised at this testimony by Mr. Davis, for Davis so testified on the trial of Mooney for this same offense on the previous trial, and if it had not been true, he could have so shown by the court stenographer, the judge, lawyers and jurors of said Federal court.

Mooney claimed he had bought said sixty, or thirty, or twelve head, as the case may be, from Jackson, and at times he claimed he only paid two horses and four mules for them. Soon after he was arrested and made bond for this offense in said first case, in the summer of 1913, he had a deliberate talk with Mr. Salmons about these cattle

Davis was claiming. Salmons swore he said he had bought them. "I asked him who he bought them from, and he said a man by the name of Jackson; I asked him what Mr. Jackson's initials was or name; he said, 'I don't know, I gave him a check for them and the check will show the initials.'" He said he gave $23.50 per head for the cattle. He did not tell Salmons where Jackson lived, nor how many cattle he bought from him, nor what else other than the check he gave for them.

No such check was produced on the trial, nor any explanation made why it was not.

Mr. Albert Walker lived about twelve miles from said McClaskey pasture, not far off the line of road from that pasture to said Davis ranch in Wheeler County. He knew the brand of Davis Brothers. About the last of February or first of March, 1913, he saw in his stalk field a cow and heifer belonging to said Davis Brothers. The figure 2 on the cow had been burned into the figure 8, and on the heifer it had been burned into said balloon bar brand; these burned brands were then fresh. When Davis found said twelve head in the McClaskey pasture, Mr. Walker went down there with others to examine them and the brand, and identified said cow and heifer which had been in his stalk field as two of the twelve. Walker didn't know how they got from his field to said pasture. Walker's evidence was in no way disputed.

In his first trial for this offense Mr. Mooney did not claim insanity as a defense and introduced no evidence whatever on that subject. That is shown in this case on this trial. On this trial, it is true, he plead not guilty, which would, of course, compel the State to prove his guilt beyond a reasonable doubt, but his only defense was insanity.

His defense was submitted in a proper charge which was prepared by his own able attorneys, and the jury told if he was insane, or they had a reasonable doubt of it, to acquit him. The jury found against him. They could not properly have done otherwise, under the evidence. They assessed the lowest punishment authorized by law.

Omitting the usual heading, and the signature of the attorneys and judge, we will quote appellant's sixteenth bill of exceptions in full. It is:

"While Newt. Willis, counsel for the State, was opening the case in behalf of the State he used the following language in referring to defendant: 'The story of the thievery of which the defendant is the head rivals the stories of Robin Hood of ancient days; he is the captain of cow thieves and is at the head of an underground system leading from Davis Brothers' pasture in Wheeler County down through Collingsworth County, terminating in defendant's pasture where these cattle were found. This system of cattle stealing must be broken up.'

"To which remarks of counsel defendant duly excepted because the defendant was not being prosecuted for stealing cattle and the argument was prejudicial and the language unwarranted by any testimony in the case and was abusive and held defendant up in an unfair and

unjust light before the jury, and request that the same be withdrawn from the jury.

"Which objections were by the court overruled. To which ruling and action of the court defendant then and there in open court duly excepted, and here now tenders his bill of exception No. 16, and asks that the same be examined, approved, and ordered filed as part of the record in this case."

The judge approved it with this qualification: "No request was ever made on behalf of the defendant either oral or written, that the court instruct the jury not to consider said remarks of counsel."

Below the judge's official signature is this, signed by appellant's attorneys: "Defendant refuses to accept the qualifications as made for the reason that both the objection was made and the request to withdraw from the jury." We cannot consider the attorneys' statement for any purpose, but as the matter appears, we, as well as they, are bound by the judge's qualification. If they, and not the judge, were correct on the point, they should have procured a bystander's bill properly sworn to as prescribed by the statute and decisions. Not having done so, we must and do conclude the judge was correct. We regard the matter, however, as unimportant, for it is certain that they requested no written charge. Charges by the judge and of attorneys, too, when given, must be in writing.

Besides the able oral argument, and the first elaborate brief filed, when this case was submitted, at the instance of both sides, we gave additional time for them to brief and argue the one question presented by this bill. Both sides did so, and then still additional time was given appellant to reply to the State's brief. So that we have three very able, earnest, and lengthy briefs on this question alone, to which we have given careful consideration.

Among other contentions appellant claims that the remarks of Mr. Willis "was mere testimony given by counsel relating to facts of the most incriminating and prejudicial character," and, in effect, caused the jury to find him guilty.

In selecting juries the law (R. S., 5126) requires the commissioners to swear they will not knowingly select any man as a juror whom they believe to be unfit and not qualified. But are required to select persons free from all legal exceptions, of good moral character, of sound judgment, well informed and who are able to read and write. (R. S., art. 5135.) When the commissioners have failed to select a sufficient number and it becomes necessary for the sheriff to summon talesmen, the law requires, and he swears, he will select none but impartial, sensible and sober men. (R. S., 5170.) Each juror who serves in a criminal case solemnly swears that he will a true verdict render according to the law and the evidence. There is no intimation in this record that all these matters were not fully and completely carried out. The jurors in this case had absolute knowledge that Mr. Willis was not a witness and did not pretend to testify as a witness to any fact whatever in this case or in connection with it. That what he said was his

mere speech and argument to them as an attorney and not otherwise. The witnesses—those who did testify—the jurors saw and knew were sworn in their presence to testify the truth, the whole truth, and nothing but the truth. And they were successively called by the attorneys for the one side or the other and placed upon the witness stand and were asked questions by the respective attorneys and gave answers thereto as witnesses. The jurors also knew and had absolute knowledge that Mr. Willis sat before them as an attorney for the State with others and at no time gave any testimony whatever as a witness, but must have participated in the examination of the witnesses who did testify on the stand, and they, nor either of them could have been misled, nor could they for one moment imagine that Mr. Willis' speech was evidence in the case. The trial must have lasted for more than one day and perhaps as much as two full days. The statement of facts shows that eleven witnesses testified in behalf of the State and five for appellant. It took sixty-three typewritten pages to transcribe their testimony in narrative form as shown by the statement of facts. The said language of Mr. Willis complained of is less than seven typewritten lines. According to appellant's contention he would have this court reverse this case because of the utterance of this language by Mr. Willis, notwithstanding the real facts and evidence in this case, which are in no way impeached or disputed, establishes, beyond the shadow of a doubt, appellant's guilt of the crime with which he was charged and convicted. And, too, notwithstanding the remarks of Mr. Willis, could in no event have affected the jury as against appellant's sole defense of insanity; and notwithstanding, too, that the verdict of the jury assessed the lowest penalty authorized by law.

The rules have been so long and so well established by the law applicable to this question, that it would seem useless to here again state them, but in view of appellant's urgent and vigorous insistence we will again state some of them and cite some of the authorities.

Bass v. State, 16 Texas Crim. App., 62, was a rape case with the death penalty assessed, and the case affirmed. This court through Judge Hurt, said the argument for the State complained of "was not proper," and "suppose we concede that the counsel for the State assumed as a fact and commented upon such fact which was not in proof, this court would not reverse the judgment unless such conduct was *very clearly* calculated to prejudice the rights of defendant. To reverse in all cases in which counsel did not confine themselves to the record would render trials farces. In fact, rare would be the case in which such irregularities would not occur."

Pierson v. State, 18 Texas Crim. App., 524, was a murder case in which a verdict assessing penitentiary confinement for thirty years was affirmed. There seems to have been two bills to remarks in argument by the district attorney—or two distinct such remarks, objected to. The record does not disclose what the first was, but as to that the trial judge told the jury to pay no attention to it. However, as to those remarks this court (p. 563) said, "We see nothing materially improper

in the district attorney's remarks." As to the other remarks this court (p. 564) said: "We can perceive no impropriety in them. It was the duty of the district attorney, if he thought the evidence established the guilt of the defendant, to demand his conviction. He demanded a conviction in the name of the State, in the name of law, justice and right, in the name of society, in the name of the widow and children of the deceased. We see nothing wrong in this. If the defendant committed the murder, he had acted against the peace and dignity of the State; he had outraged law, justice, right and society; he had clothed the wife in widow's weeds, and had made fatherless the children of the deceased; and each and all of these consequences of his crime demanded his conviction and punishment.

"It has become quite common to except to the remarks of counsel for the State in their addresses to the jury. We find such exceptions in the majority of contested cases that come before us. If we had sustained all these exceptions, the effect would have been to have virtually closed the mouths of prosecuting attorneys. While argument should be restricted legitimately, it should not be so unreasonably limited as to render it ineffectual. The State has rights in this respect as well as defendants. And in view of the frequency of exceptions of this character, we will take occasion here to say that before we will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear to us (1) that the remarks were improper, and (2) that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights."

Tweedle v. State, 29 Texas Crim. App., 586, was a murder case where all three defendants were convicted, thirty years in the penitentiary was assessed against two of them, W. H. and George Tweedle, and twenty-five years against the other, Martin, a little negro boy. The judgment was affirmed as to both Tweedles, but reversed as to the negro boy solely because the evidence was insufficient to show his guilt. Appellants objected to this language (p. 591): "A man could breathe slander and circulate slanderous reports against a woman, but he was not half as bad as the man that whipped his wife," used by the district attorney in his opening argument. This court, through Judge Davidson said: "Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as would be *clearly* calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. House v. State, 19 Texas Crim. App., 227; Bass v. State, 16 Texas Crim. App., 62."

In this Tweedle case Judge Davidson further states that appellants also complained of this argument by the district attorney: "Why did not these defendants at the examining trial offer the same evidence in

extenuation as they do now?" That nearly all defendants' witnesses attended the examining trial but none of them testified. They did on final trial. That the Tweedles on the night and day subsequent to the killing made statements of the manner and cause of the killing antagonistic to their evidence on the final trial. To the sheriff they stated deceased came upon them armed and tried to kill them. On final trial they testified they killed deceased because he had used insulting language concerning Mrs. Tweedle and had been guilty of other insulting conduct towards her. Judge Davidson says: "The remark of the district attorney was a legitimate criticism upon the failure of the defendants to offer in evidence at the examining trial the conduct of the deceased toward Mrs. Tweedle, which was the principal defense on the final trial."

In House v. State, 19 Texas Crim. App., 227, House was prosecuted and convicted of cattle theft and his punishment assessed at penitentiary confinement. Evidence was introduced that the brands of the alleged stolen cattle had been burned. House had three bills, 7, 8 and 9, to statements of the district attorney in argument to the jury. In the seventh this was the language: "Gentlemen: Myself and the county attorney, Mr. Atkinson, have been attacked for our mode of prosecution. There is this difference between the prosecution and the defense: The counsel for the defense in this case are representing renegades, thieves, murderers and cut-throats." In approving this bill the trial judge stated: "The counsel for the defendant had, in their remarks, been very severe upon the State's counsel, and in the opinion of the court the remarks of the district attorney were intended to refer to defendants generally and the class of clients on the criminal docket of the court."

The language in the eighth was: "The State of Texas might be raked over with a fine-toothed comb, and a more notorious character than the defendant, John House, could nowhere be found." The trial judge made no qualification of this bill.

The language of the ninth was: "And the district attorney then stated further that no doubt the object of the defendant was to get the cattle back in his range, and then gather around him the thieves, cut-throats and robbers with whom he associated, and defy the officers of the law when they attempted to take the stolen property from him; that the defendant would steal his neighbors' cattle and then gather around him cut-throats, thieves and robbers and defy the law." As to this the trial judge said: "The court is of the opinion that the remarks of the district attorney were intended as explaining or as drawing his conclusions from the evidence, that the defendant had said if he could get the cattle back from Trammel, by d—n, he would like to see anybody take them from him," etc. In this bill House complained of this language of the district attorney: "Who is this Reinhardt Schneider that you have heard of in this case? He is a refugee from justice, and I might suppose that there is an oath of the defendant on file in this case in which he swears he wants a continuance to prove that he bought these stolen cattle from Reinhardt Schneider." When

appellant objected to this last, "the court directed the district attorney to confine himself to the evidence in the case, when he further remarked to the jury: 'I did not say there was any affidavit on file; I only said I am going to suppose the fact. I do this to show what character of men are the associates of the defendant. I have proved by Captain Jones, the sheriff of your county, that Reinhardt Schneider is a refugee from justice.'" To this latter appellant again objected.

The report of this House case clearly shows the trial judge in no way withdrew any of said statements from the jury, but expressly let them all stand. Appellant therein contended vigorously this court should reverse because of each and all of said matters. But this court said: "The most objectionable of which perhaps was that 'the State of Texas might be raked over with a fine-tooth comb, and a more notorious character than the defendant, John House, could nowhere be found.' The objection to this remark, as stated in the bill, is that defendant's character had not been put in issue by himself. Still, the charge against him, and evidence which had been adduced to support it, were in their nature likely to reflect somewhat unfavorably upon his character, even if they did not put its notoriety throughout the State in issue. We construe the remark to be not so much evidence of a desire to make use of foreign matter to the injury and prejudice of defendant as an impassioned expression, highly exaggerated it may be, but springing inadvertently from the heat of debate. If all such remarks were held reversible error, but few convictions would stand the test where the case had been hotly contested by able and zealous counsel in the courts below.

"The remarks set out specifically in the ninth bill of exceptions are rather deductions and arguments upon the evidence than mere opinions or independent statements by the district attorney. We can not say they were entirely unwarranted by the evidence." And the opinion cites and quotes as the law, the Pierson case, supra. A very large number of cases, even down to this very date, could be cited, citing and approving these cases and rules, but we deem it unnecessary to do so.

By many other decisions of this court this further rule is also well established: When an objectionable statement is made in argument not authorized by the evidence, nor a deduction therefrom, merely objecting thereto will not present reversible error. In order to do so, the party must also request in writing a charge requiring the jury to disregard it. Hatchell v. State, 47 Texas Crim. Rep., 385; Fielder v. State, 127 S. W. Rep., 1055; Kennedy v. State, 19 Texas Crim. App., 634; Young v. State, 19 Texas Crim. App., 543; Lancaster v. State, 36 Texas Crim. Rep., 20; Dies v. State, 56 Texas Crim. Rep., 32; Rahm v. State, 30 Texas Crim. App., 313; Garello v. State, 31 Texas Crim. Rep., 61; Vann v. State, 48 Texas Crim. Rep., 15; Wright v. State, 37 Texas Crim. Rep., 146, and Franklin v. State, 38 Texas Crim. Rep., 347; Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W. Rep., 119.

Mr. Branch in his Criminal Law, sec. 62, p. 32, states another rule: "Unless the remarks of counsel are obviously of a nature to impair the

rights of defendant, or prejudice his case before the jury, such remarks, though improper, will not be considered for reversal unless a charge was asked and refused and exception reserved. Kennedy v. State, 19 Texas Crim. App., 634; Young v. State, 19 Texas Crim. App., 543; Jones v. State, 33 Texas Crim. Rep., 7, 23 S. W. Rep., 793; Lancaster v. State, 36 Texas Crim. Rep., 16, 17 S. W. Rep., 979; Mason v. State, 15 Texas Crim. App., 549; Felder v. State, 127 S. W. Rep., 1055; Rahm v. State, 30 Texas Crim. App., 313, 17 S. W. Rep., 416; Hatchell v. State, 47 Texas Crim. Rep., 385, 84 S. W. Rep., 234; Garello v. State, 31 Texas Crim. Rep., 61, 20 S. W. Rep., 179; Vann v. State, 48 Texas Crim. Rep., 15, 85 S. W. Rep., 1064; Wright v. State, 37 Texas Crim. Rep., 146, 38 S. W. Rep., 1004; Franklin v. State, 38 Texas Crim. Rep., 347, 43 S. W. Rep., 85."

It is true this court has reversed some cases where even such charge was given. But they were exceptions—not a rule. Appellant cites some of them. Each case in this respect must rest on its own facts.

We will give a condensed statement of what the uncontradicted evidence establishes: (1) Davis Brothers were the owners of the alleged twelve head of stolen cattle. (2) Said twelve head and others, to the number of sixty, were stolen from them in Wheeler County. (3) These twelve head, if not all the sixty, were taken from Wheeler County when stolen, and delivered to appellant in Collingsworth County. (4) He knew they belonged to said Davis Brothers, and had been stolen from them. (5) He knew the Davis Brothers' brand on them had been burned, or he himself then burned, and changed said brand. (6) He not only received these cattle with all this knowledge, but he also concealed them to keep said Davises from finding and getting them. (7) The McClaskey pasture, where he concealed them, was secluded, broken, rough and had deep canyons in it. The cattle grazed and watered in these canyons and could not be seen from any other point. It was in Collingsworth County, about thirty miles from said Davis ranch in Wheeler County. (8) Appellant's only defense on this trial was insanity. He made no such defense on his first trial. (9) The lowest penalty was assessed against him.

Now let us consider Mr. Willis' speech. He said: "The story of thievery, of which this defendant is the head, rivals the stories of Robin Hood of ancient days." Unquestionably this record establishes a "story of thievery." It is true Mr. Mooney was not charged with theft. But in order to convict him as charged with "receiving and concealing" the stolen cattle, it was necessary to establish the theft and to show he knew they were stolen. So that he must have known and dealt with the thief, and we think it not inappropriate that he be designated "the head" of the thievery. The statement it "rivaled the Robin Hood stories," could not be material nor harmful. Nor can we see but that the statement, "he is the captain of cow thieves," could well be said from the facts and inferences therefrom. He knowingly dealt with a cow thief when he bought these stolen cattle. This cow thief could not thrive without having someone as the head or captain

to buy the stolen cattle from him and conceal them, and it is no stretch to call him "the captain."

The fanciful statement, "he is at the head of an underground system from Davis Brothers' pasture in Wheeler County down through Collingsworth County, terminating in defendant's pasture, where these cattle were found," might well be drawn from the facts of this case. As stated, the thief who stole these cattle might be said to have had appellant "at the head"—someone who would help him by buying and concealing the stolen cattle, and appellant proved to be that one. Evidently the "underground system" had reference to the deep underground canyons wherein appellant had concealed these cattle, and unquestionably they had been taken from Davis Brothers' pasture in Wheeler County to appellant's said pasture in Collingsworth County, where they were actually found.

Surely, no·one ought, or could properly, object to the statement, "this cattle stealing must be broken up," whether it correctly or incorrectly be designated "system."

But concede that each and all of the statements of Mr. Willis were wrong and that the evidence furnished no basis therefor, still the language under the circumstance of this case, and the verdict of the jury, should not and ought not to result in a reversal. They were not of such a material nature as to impair his rights nor prejudice him, or his case, before the jury; nor did they do so. Nor were they "of such a grave character as to render it obviously injurious" to him, which would or could justify this court to reverse this case.

There was no material error committed in the trial of this case and it should be affirmed, and it is so ordered.

*Affirmed.*

ON REHEARING.

May 12, 1915.

PRENDERGAST, PRESIDING JUDGE.—Everything made a ground for rehearing herein was thoroughly considered before the original opinion was handed down. Appellant, in effect, concedes this and that he can add nothing to what was urged before. It is altogether unnecessary to take up any of these matters and discuss them again. They were correctly disposed of in the original opinion.

There is a matter, however, called to our attention which, in justice to appellant's attorneys and ourselves, we desire to correct. In the original opinion we stated, in effect, that there was a document in the record signed by appellant's attorneys as objections to the court's charge, and as to this we stated: "This document does not show to have ever been presented to or acted upon by the judge, for the judge makes no noting thereon that it was ever presented to or acted upon by him. Nor does the record show any bill of exceptions by appellant to the court's refusal or failure to consider or comply with any of his said objections."

The record is quite voluminous. Evidently in dictating the opinion,

we had before us the said document, as copied on pages 39 to 44, inclusive, of the record, and what is failed to be shown there is correctly stated by us. However, appellant in his motion for rehearing calls our attention to the fact that on pages 120 to 126, inclusive, said document is copied in his bill No. 2 with the proper heading stating it was presented to the judge prior to the time he read his charge to the jury. It is further stated therein, the judge "thereupon corrected his charge in part, but refused to conform same to the said objection as made," and ordered said objections filed as a part of the record, to which he excepted, etc. The judge approved and ordered said bill filed, and signed his name thereto officially. This bill was overlooked by us in the connection when we stated what we did about the document, as shown on pages 39 to 44. We make this correction cheerfully, because otherwise it might have a tendency to show that appellant's attorneys in the trial court had omitted a material matter. Everyone who knows them, and this court especially, knows that they are diligent in representing their clients and in taking every precaution to correctly preserve and present whatever errors they think are committed in the trial court. We regret that we failed to call attention to this in the original opinion.

It will be noticed, however, that we fully considered every objection that was made to the court's charge and every special charge requested by appellant which was refused, as shown in the original opinion.

The motion for rehearing is overruled.

.                                                                    *Overruled.*