### Gregorio Gomez v. The State.

#### No. 5031.   Decided June 19, 1918.

**1.—Theft of Cattle—Evidence—Ownership—Registration—Partnership—Brand.**

Where, upon trial of theft of cattle, the ownership was alleged in a partnership, there was no error to admit in evidence a certified copy of the registration of the alleged owners' brand in the county of their residence. Following Turner v. State, 71 Texas Crim. Rep., 477, and other cases. And it was immaterial whether the alleged owners were partners or not.

**2.—Same—Pleading—Former Conviction—Announcement.**

Where the record showed on appeal that the court offered to permit defendant to file a plea of former conviction, but refused to let him withdraw his announcement, there was no reversible error.

**3.—Same—Verdict—Different Counts—Amendment.**

Where the indictment alleged theft of cattle and in another count the fraudulent receiving thereof, and the court only submitted the count on theft, there was no error in having the jury to so amend their verdict in the presence of the court as to apply only to the count of theft.

**4.—Same—Charge of Court—Partnership.**

There was no error in the refusal of the court to peremptorily charge the jury to acquit because the proof showed that the owners owned the property as a firm.

**5.—Same—Ownership—Consent—Rule Stated—Partnership.**

The rule is that want of consent may be proved by circumstantial evidence if the owner is dead, and where the property was alleged to belong to owners

who were partners and one of them had since died, and the evidence showed circumstantially the want of consent of said deceased owner, the same was sufficient under a proper charge of the court.

Appeal from the District Court of Jim Hogg. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of theft of cattle; penalty, two years in the penitentiary.

The opinion states the case.

*W. R. Perkins, James B. Wells,* and *M. H. West,* for appellant.—On question of consent: Hardeman v. State, 58 Texas Crim. Rep., 51, 124 S. W. Rep., 632; Baily v. State, 18 Texas Crim. App., 426.

On question of ownership: Radford v. State, 35 Texas, 16.

On question of reasonable explanation: Daniels v. State, 60 Texas Crim. Rep., 515, 132 S. W. Rep., 773.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of cattle theft and assessed the lowest punishment.

The indictment was in two counts. The first alleged the theft of three head of cattle by appellant on or about May 20, 1914, in Jim Hogg County from the owners, Manuel Guerra and Horatio P. Guerra. The other count alleged the fraudulent receiving of said cattle from some person to the grand jurors unknown. The court submitted solely the first count. He did not submit the second count for a finding at all, but peremptorily instructed the jury to find him not guilty on that count.

The alleged owners were shown to be partners in the ownership of said cattle and other property. They were father and son. Some time before the trial of this case the father, Manuel Guerra, died. The alleged owners had lived in Starr County and had their cattle ranches and cattle in that county. Appellant lived in Jim Hogg, an adjoining county.

The evidence shows that the said owners used the figures "10" as their brand on cattle, which was duly recorded in the county of their residence. Appellant is shown to have been in possession of said three head of cattle in Jim Hogg County on or about May 20, 1914, and on that date sold them with some others to one Garza. It was also shown that at the time appellant sold these cattle to Garza that the said brand had been burned over just a few days prior to that time. The burning consisted in extending the figure "1" down some distance and adding another "0" below the figure "0" in the brand to make the burned brand "18." This was sworn by several witnesses and in no way contradicted. The next day or two after appellant sold these cattle to Garza, Garza sold them to another party. When the burning of these brands was carefully examined and it was ascertained that the said owners' brand had been just burned over, the owners were informed

and at once proceeded to procure and have the cattle returned to them. However, by the owners' consent, one of the head was slaughtered so as to preserve and show the original and burned brands, which was done on the trial by that portion of the hide on which the burn was. The alleged stolen cattle were shown to be the property of the alleged owners.

The questions to be decided are raised by bills of exceptions. The first claimed that the court erred in admitting in evidence a properly certified copy of the registration of the alleged owners' brand in Starr County, the county of their residence. This was clearly admissible under the Act of March 31, 1913, page 129, and the decisions, to prove ownership of the alleged owners. Turner v. State, 71 Texas Crim. Rep., 477; Turner v. State, 170 S. W. Rep., 1096; Mooney v. State, 176 S. W. Rep., 52; Atterberry v. State, 19 Texas Crim. App., 401; Walton v. State, 41 Texas Crim. Rep., 454. It would make no difference under the allegations and the law whether the alleged owners of said cattle owned them as partnership property or jointly as individuals without being partners. Atterberry, supra.

The appellant's next bill complains that the court refused to permit him to withdraw his announcement of ready for the purpose of filing a plea of former conviction as of date before making such announcement of ready. The bill shows that while the court refused to permit him to withdraw his announcement, the court offered to permit him to then file such plea, but he refused to file it because the court would not let him withdraw his announcement. This is the only thing that appears in the whole record on this subject. The bill presents no error.

His next bill complains of the action of the court about what was done about the verdict. It shows that the jury brought in a verdict finding him guilty as charged and assessed his punishment at two years confinement in the penitentiary. They failed at that time, as the court had instructed them at appellant's instance, to find him not guilty of receiving stolen property. The explanation of the bill by the court was that when the jury returned the verdict as stated in open court the court again read to the jury the special instruction requested by appellant which he had given them to return a verdict of not guilty on the second count in the indictment. The court thereupon wrote out a verdict of not guilty on the second count. The jury heard the court read it to them and read said special instruction and they then presented that verdict finding him not guilty on the second count as instructed by the court. This presents no error at all.

The court did not err in refusing to give his special charge peremptorily instructing the jury to acquit. Nor in refusing his other charge requiring the jury to peremptorily acquit him because the proof showed that the owners owned the property as a firm and partnership and not as individuals only.

The proof showed that just after Garza, who purchased them from appellant, sold the cattle and they were discovered to have had the said

owners' brand burned over so recently, the sheriff took them in charge and had them taken to Hebronville, the county seat of Jim Hogg County. Horatio P. Guerra, one of the owners, testified in substance upon direct examination that the cattle were taken without his consent. The appellant then in cross-examination of him proved by him that Mr. Thompson, the sheriff of Jim Hogg County, who had taken charge of the cattle as stated, wired him and his father from Hebronville that he had some cattle belonging to them. These cattle were those for the theft of which appellant was indicted. And had him further swear: "To the best of my knowledge and belief I can swear that my father never sold these particular cattle at any time to any one; I can swear that so far as I know. Yes, I know of my own personal knowledge because we had a conversation about it at the time—I beg your pardon, I was telling how I knew. I don't see how I can know otherwise. Yes, I know he did not sell them. I know that from my conversation I had with him. That is the only way I know it. I could not know it otherwise." On redirect examination the witness testified that after he received the said wire from the sheriff that he went to Hebronville; that before he went he had a conversation with his father about these cattle and that he then went to Hebronville and saw these cattle, and they were restored to his father and himself.

Appellant has two bills of exceptions about this testimony. One states that over his objections the State was permitted to ask said witness if he had a conversation with his father before he went to Hebronville. He answered that he did. Appellant's attorneys then asked him: "About this matter?" He answered: "Yes, sir." The State asked: "About these cattle?" and he said: "Yes, sir." The other shows that the State stated to the witness this: "Now, without stating what you said to your father or what your father said to you—I don't want to ask you what the conversation was—tell the jury where you went after you received that telegram from Mr. Thompson." Answer: "I went to Hebronville." Q. "Before going to Hebronville state whether or not you had any conversation with your father." The bill states, then, that he objected to this question for various reasons. This bill does not show that he objected to any answer of this witness at all—it was to this one question. The court's qualification of the bills makes this explanation: that the State's counsel when questioning the witness explained to him that he did not desire him to state anything that he said to his father or that his father said to him or even the subject matter of the conversation, but merely asked him if he had a conversation with his father. That counsel for appellant objected and himself proceeded to ask the witness what the conversation was about. The witness answered the question of appellant's attorney that the conversation was about the cattle in question. That appellant's counsel also brought out from said witness that to the best of witness' knowledge and belief and he would swear positively, his father did not give anyone permission to take the cattle in question, and after doing so counsel

for appellant requested the court to instruct the jury to not consider the testimony of said witness as to whether his father had given anyone permission to take said cattle and that the conversation was about said cattle. The court gave the jury such instructions at the request of appellant's counsel, striking out the evidence that the counsel for appellant himself developed; and that again the counsel for the State merely asked the witness if he had a conversation with his father before leaving for Hebronville. Whereupon appellant's counsel again brought out the fact that the subject matter of the conversation was the cattle in question, and no objection was made to the evidence at this time. That witness had had a conversation with his father but counsel for appellant objected to showing that the conversation was about the cattle in question which counsel for appellant showed himself. That the court had already instructed the jury not to consider it. The appellant accepted the bill as thus qualified by the court and as qualified the bills do not show reversible error.

The statute, article 457, C. C. P., is, where property is owned in common or jointly by two or more persons the ownership may be alleged to be in all or either of them. It is true that it has been held that where the ownership is alleged to be in two persons the want of consent of both must be shown. But it is clearly settled that want of consent may be proven by circumstantial evidence if the alleged owner is dead. See cases collated in 2 Branch's Ann. P. C., page 1327. It has also repeatedly been held that where an indictment alleged the ownership to be in one party and the proof showed that it belonged to a partnership there was no variance between the allegation and proof and the court could properly charge the jury that the State need not prove the want of consent except as to the one in whom ownership was laid. As stated, Manuel Guerra was dead at the time of this trial. In addition to the testimony of the other owner, Horatio P. Guerra, the whole trend of the testimony by many circumstances tends to show and authorize the jury to believe that the property was taken without the knowledge and consent of the deceased owner, too. The court's charge properly required the jury to so believe before they could find appellant guilty. And the court also in his charge applied the law of circumstantial evidence on this point. Taking the testimony as a whole it is reasonably certain that the property was taken without the deceased's consent.

The judgment is affirmed.

*Affirmed.*